A01A0140. WINDER v. PAUL LIGHT'S BUCKHEAD JEEP EAGLE CHRYSLER PLYMOUTH, INC.
A01A0141. WINDER v. RIVERS.
(549 SE2d 515)

ANDREWS, Presiding Judge.

In March 1996, Maryanne Winder bought a 1987 Corvette from Paul Light's Buckhead Jeep Eagle Chrysler Plymouth, Inc. which had recently acquired the car as a trade-in from the only previous owner, Richard F. Rivers. Shortly after the purchase, Winder claimed she discovered the car's odometer had previously been tampered with and set back to reflect lower than actual mileage. She sued Paul Light's and Rivers alleging that both defendants knowingly tampered with and set back the odometer and that Paul Light's knowingly sold her the car with the altered odometer, all with the intent to defraud her in violation of OCGA § 40-8-5. Winder appeals from the trial court's grant of summary judgment in favor of Paul Light's in Case No. A01A0140 and in favor of Rivers in Case No. A01A0141. We consolidate these appeals for consideration in this opinion. As to Winder's claims against Paul Light's, we find the evidence was sufficient to create a jury issue on the claim that Paul Light's knowingly sold the car with an altered odometer but was insufficient to create a jury issue on the claim that Paul Light's knowingly tampered with the odometer. Accordingly, we affirm in part and reverse in part the grant of summary judgment in Case No. A01A0140. Because the evidence was sufficient to create a jury issue on Winder's claim that Rivers tampered with the odometer, we reverse the grant of summary

judgment in Case No. A01A0141.

After visually inspecting and test-driving the car, Winder bought the car from Paul Light's on March 11, 1996. Despite being a 1987 model, she paid the $16,990 asking price because of the car's well-kept appearance and because it showed only 16,984 miles on the odometer. Three days after the purchase, Winder started having mechanical problems with the car and took it to a mechanic for an inspection.

After visually inspecting the car, the mechanic, Greg Nettles, told Winder the car appeared to him to have substantially more miles on it than indicated on the odometer. Nettles deposed that, although the car had a good appearance, he observed signs of wear on visible engine parts and road grime and stains on other engine parts that indicated there were substantially more than 17,000 miles on the car. He also observed that the brake pedal on the car was brand new, probably indicating replacement of an old worn down pedal that showed higher mileage and that the car had recaps on the original tires. Nettles further noted that when he later had the engine rebuilt for Winder in February 1997, after an engine rod failed, he observed wear on internal engine parts that showed the car had been driven substantially more miles than shown on the odometer. Another mechanic, Dexter Lee, who worked on the car with Nettles, testified that he saw internal engine parts from the car that showed wear he would expect in a car that had been driven in excess of 100,000 miles. Contrary to Nettles, he testified that the brake pedal on the car was old and appeared to exhibit excessive wear.

As a result of the inspection, Winder contacted the Governor's Office of Consumer Affairs on March 15, 1996, and arranged for an odometer fraud investigator in that office, Russell Laurens, to inspect the car's odometer. Laurens testified by deposition that his inspection showed the odometer had been tampered with. Upon close inspection, Laurens observed "numerous scratches and pick marks and gouges on the numeral wheels" of the odometer, indicative of tampering. He also observed that the odometer's tamper-resistant strip had indentations, that the odometer numeral wheel assembly was partially lifted from its frame, and that the pinion carrier plate on the odometer was bent, all of which were strong indicators of tampering. A service sticker showed that the car's dash had been removed and the instrument panel cluster serviced in 1989, but Laurens' opinion was that the markings and damage to the odometer that he observed were not inadvertently caused during the servicing. Moreover, he noted there was no odometer change sticker on the car indicating that the odometer itself had been legitimately serviced. Although Laurens testified that the odometer tampering was done with more skill than that of an average layman, he also said he

would not expect to find the gross marks and gouges he observed if a shop experienced in odometer service and repair had altered the odometer. Laurens also contacted Rivers and asked for service records on the car. He said Rivers provided him with some emission inspection records but did not respond to his request for service records.

In reviewing the paperwork on Winder's purchase of the car, Laurens discovered discrepancies in the odometer disclosure statement provided at the time ownership of the car was transferred from Rivers to Paul Light's on February 13, 1996. The statement showed Rivers' name typed in as the transferor and stated that the odometer read 16,937 miles. However, the statement indicated not that this was the car's actual mileage, but that "the odometer reading reflects the amount of mileage in excess of its mechanical limits." Laurens testified that this statement indicated the odometer reading of 16,937 miles should actually be read as showing the car had traveled 116,937 miles. The statement failed to contain the required signature by the transferor but did contain a signature for the transferee, Paul Light's. Subsequently, Laurens had a meeting with Paul Light's during which Paul Light's produced a revised odometer disclosure statement which was signed by Rivers as the transferor, dated February 13, 1996, and stated that the odometer reading of 16,937 miles reflected the car's actual mileage.

As part of the paperwork she received when she purchased the car, Winder identified an odometer disclosure statement dated March 11, 1996, signed by Paul Light's as transferor to her, which stated that the odometer reading of 16,984 miles on that date reflected the car's actual mileage. Winder testified that the February 13 odometer disclosure statement indicating mileage in excess of the odometer's mechanical limits was part of the paperwork she received when she purchased the car from Paul Light's on March 11, 1996, but she testified she did not notice this statement at the time of the purchase. Winder said she reviewed the purchase paperwork and first discovered this odometer disclosure statement after she discovered evidence of odometer tampering after the purchase. She contacted Paul Light's about the discrepancy between this earlier statement and the March 11 odometer disclosure statement and was told there was a mistake on the February 13 statement. Winder could not recall whether she had ever seen the revised February 13 odometer disclosure statement that was provided by Paul Light's to Laurens.

In support of his motion for summary judgment, Rivers gave an affidavit in which he stated that he bought the Corvette new in March 1988, owned it until he traded it in to Paul Light's on the purchase of another car in February 1996, and received a $13,000 trade-in allowance. He said he drove the car only periodically as a

pleasure car, kept it in a garage in excellent condition, and that the car's odometer registered 16,974 miles when he traded it in to Paul Light's. Rivers stated that he never tampered with the car's odometer, never directed anyone else to do so, and was not aware of anyone else tampering with the odometer. According to Rivers, the low mileage shown on the odometer was accurate and consistent with the car's condition. Rivers provided emission inspection records for the car for four years from 1992 to 1995 showing the following odometer readings on the inspection dates: 1992 — 11,250 miles; 1993 — 12,596 miles; 1994 — 13,550 miles; 1995 — 15,604 miles.

An affidavit provided by Paul Light's sales manager in support of its motion for summary judgment stated that, when Rivers traded the 1987 Corvette to Paul Light's on February 13, 1996, the odometer reading was 16,937 miles, and Rivers was given a $13,000 trade-in allowance based on the car's low mileage and excellent condition. The manager stated that the odometer reading appeared to be correct and was consistent with the car's excellent appearance and statements by Rivers that the car was kept as a pleasure vehicle and driven only occasionally. According to the manager, Paul Light's did not tamper with the car's odometer in any way.

1. The testimony given by the odometer fraud investigator, Laurens, showing tampering with the odometer, along with the testimony from the mechanics that the car appeared to have substantially more miles on it than shown by the odometer, provided direct and circumstantial evidence sufficient to create a factual issue precluding summary judgment as to whether someone had tampered with the odometer by setting it back to reflect lower than actual mileage in violation of OCGA § 40-8-5. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Although the trial court did not give the reasons for its grant of summary judgment in favor of Paul Light's and Rivers, to the extent the court concluded there was insufficient evidence of odometer tampering, this was error.

2. A factual issue precluding summary judgment was also presented as to whether Paul Light's violated OCGA § 40-8-5 (c) by knowingly selling the car to Winder when it reflected lower mileage than the car had actually been driven due to odometer tampering in violation of OCGA § 40-8-5 (a).

Paul Light's denies selling the car in violation of OCGA § 40-8-5 and points to evidence that it acquired the car with 16,937 miles on the odometer in a condition consistent with the low odometer reading and with assurances from Rivers that he drove the car only occasionally. However, other evidence was presented from which a jury could conclude that Paul Light's knew or should have known when it sold the car to Winder that it had been driven substantially more miles than was reflected on the odometer.

Paul Light's was aware of the February 13 odometer disclosure statement indicating the car's odometer reading reflected mileage in excess of the odometer's mechanical limits. Although this was not evidence of odometer tampering in violation of OCGA § 40-8-5, a trier of fact could conclude that it was evidence showing the 1987 car had been driven far in excess of the 16,937 miles reflected on the odometer when Paul Light's acquired the car in February 1996. If Paul Light's had reason to suspect that the car's odometer reading was inaccurate, then it had a duty to reasonably investigate that suspicion before selling the car to Winder and giving her an odometer disclosure statement certifying that the odometer reading was accurate. Testimony from the mechanic who inspected the car for Winder three days after the purchase showed that a cursory visual inspection of the car and the engine compartment revealed clear signs that the car had been driven substantially more miles than the mileage reading on the odometer. A trier of fact could conclude from this evidence that Paul Light's had reason to suspect that the 1987 car had been driven more miles than the odometer reflected and it knew or should have known by conducting a reasonable investigation that the odometer reading was not accurate when it sold the car to Winder. The trial court erred by granting summary judgment in favor of Paul Light's on this issue.

3. Winder contends the circumstantial evidence was sufficient to create a jury issue as to whether Paul Light's and Rivers violated OCGA § 40-8-5 (a) by knowingly tampering with and setting back the car's odometer so as to reflect a lower mileage than the car had actually been driven.

Although there was direct and circumstantial evidence that the odometer had been tampered with and set back, only circumstantial evidence supported Winder's claim that Paul Light's or Rivers did the tampering.

When a plaintiff's right to recover depended upon the establishment of a particular fact, and the only proof offered for this purpose was circumstantial evidence from which the existence of such fact might be inferred, but which did not demand a finding to that effect, a recovery by the plaintiff was not lawful, when, by the positive and uncontradicted testimony of unimpeached witnesses, which was perfectly consistent with the circumstantial evidence relied on by the plaintiff, it was affirmatively shown that no such fact existed.

*Frazier v. Ga. R. & Banking Co.*, 108 Ga. 807 (33 SE 996) (1899). In other words, circumstantial evidence has no probative value in estab-

lishing a fact where such evidence is consistent with direct, unimpeached evidence showing the nonexistence of such fact. *Blount v. Sutton*, 114 Ga. App. 767, 770 (152 SE2d 777) (1966). Put another way,

> [b]efore circumstantial evidence can have any probative value to rebut or contradict direct and positive testimony of an unimpeached witness of the alleged facts in question, such evidence must point at least more strongly to a conclusion opposite to the direct testimony. It is not sufficient that such circumstantial evidence points equally one way or the other.

*Griffin v. Blackshear Bank*, 66 Ga. App. 821, 825 (19 SE2d 325) (1942).

It is also true that for an inference drawn from circumstantial evidence to be sufficient to create a genuine issue of fact precluding summary judgment, it must be reasonable and must amount to more than mere speculation, conjecture, or possibility. *Pafford v. Biomet*, 264 Ga. 540, 544 (448 SE2d 347) (1994); *Butler v. Huckabee*, 209 Ga. App. 761, 762 (434 SE2d 576) (1993).

Applying these standards, we conclude that, as against Rivers' testimony to the contrary, the circumstantial evidence was sufficient to create a jury issue on Winder's tampering claim against Rivers. Rivers owned the car from early 1988 when he purchased the new 1987 model until he traded the car to Paul Light's in February 1996. During that time, Rivers kept the car in his possession, maintained it in excellent condition in a garage, and used it as a pleasure vehicle. Based in part on the low odometer mileage reading, Rivers received a substantial trade-in allowance of $13,000 for the car when he transferred ownership to Paul Light's. Laurens testified that the odometer tampering he discovered, although more skillful than that of the average layman, left gross marks and gouges that he would not expect to find if a shop experienced in odometer service and repair had altered the odometer. Moreover, Rivers failed to cooperate with Laurens' request that he produce service records on the car. Although the emission records Rivers produced showing low mileage on the car were consistent with his denial of tampering, they did not demonstrate that no tampering occurred.

Accordingly, there was evidence showing that Rivers had ample opportunity and motive for the tampering and that the tampering was not done by a professional. The circumstantial evidence in support of Winder's tampering claim against Rivers points at least more strongly to a conclusion opposite to Rivers' testimony denying the claim and is sufficient to allow a jury to draw reasonable inferences

in favor of the claim. The trial court erred in granting summary judgment in favor of Rivers on this issue. *Joseph Charles Parrish, Inc. v. Hill*, 173 Ga. App. 97, 98-99 (325 SE2d 595) (1984).

On the other hand, as against the sales manager's testimony for Paul Light's to the contrary, the circumstantial evidence was not sufficient to create a jury issue on Winder's claim that Paul Light's tampered with and set back the car's odometer. Paul Light's acquired the car from Rivers on February 13, 1996, by paying a substantial $13,000 trade-in allowance based in large part on the car's low odometer reading showing 16,937 miles on the car. Rivers confirmed that this was the odometer reading when he traded the car to Paul Light's. Paul Light's had possession of the car for only a month before selling it to Winder, and Laurens' testimony showed that the tampering was not done with the level of skill he would expect from professionals. Moreover, the February 13 odometer disclosure statement indicating a mileage reading in excess of the odometer's mechanical limits supports an inference not that Paul Light's tampered with the odometer, but that it sold the car to Winder aware that the 16,937 mile reading did not reflect the actual miles on the car.

The circumstantial evidence relied upon by Winder to support her claim that Paul Light's tampered with the odometer either is consistent with or tends to support the testimony that Paul Light's did not tamper with the odometer. Accordingly, it amounts to mere speculation and is insufficient to create a genuine issue of fact. The trial court correctly granted summary judgment in favor of Paul Light's on this issue.

*Judgment affirmed in part and reversed in part in Case No. A01A0140. Judgment reversed in Case No. A01A0141. Eldridge and Miller, JJ., concur.*

DECIDED MAY 24, 2001.

*Foster & Foster, Donald R. Foster, Christina M. Harris, Melnick, Moore & Elliott, Larry M. Melnick,* for appellant.
*Fain, Major, Wiley & Brennan, Gene A. Major, Brian H. Alligood, Deborah L. Morgan,* for appellee (case no. A01A0140).
*Arrington & Hollowell, Gary W. Diamond, Teri E. Brown,* for appellee (case no. A01A0141).