## A98A0595. ANTHONY v. CHAMBLESS.
### (500 SE2d 402)

ELDRIDGE, Judge.

This wrongful death case involves allegations of medical malpractice in the failure to diagnose and treat the decedent, Willie C. Anthony. The plaintiff, Emma Anthony, the widow of the decedent, appeals the trial court's grant of summary judgment to the defendant, Dr. Fred Chambless. Concluding that summary judgment was proper because the plaintiff failed to present evidence showing that the defendant's alleged negligence proximately caused the decedent's death, we affirm.

The facts of this case are as follows: at approximately 11:46 a.m. on December 12, 1988, the decedent fell approximately 30 to 40 feet from a bridge being constructed across Interstate 75 in Monroe County. The decedent was transported to the emergency room of Monroe County Hospital, where he was examined by the defendant at approximately 12:14 p.m. The decedent was conscious and aware of his surroundings. After ordering several tests, the defendant determined that the decedent had suffered a severely fractured pelvis and required surgical treatment beyond that available at Monroe County Hospital, which had no surgical facilities. The defendant consulted with the decedent about the need to transfer him to a hospital that had the necessary medical facilities, and the decedent asked to be transferred to Upson County Hospital because it was closer to his home and he had relatives who worked there. At 1:20 p.m. the decedent was transported to Upson County Hospital, and he arrived at approximately 2:00 p.m. However, his condition deteriorated, and he died at approximately 2:50 p.m. It was later determined that the decedent had suffered a ruptured thoracic aorta, which caused him to bleed internally until his death.

The plaintiff sued the defendant on August 5, 1993 in the Superior Court of Taylor County, alleging that the defendant committed medical malpractice when he failed to properly examine or observe the decedent and, therefore, failed to diagnose the decedent's ruptured aorta. Such failure to diagnose the condition allegedly resulted

in the decision to send the decedent to Upson County Hospital, which is 40 minutes away from Monroe County Hospital, instead of either keeping the decedent for further observation or transferring him to the Medical Center of Central Georgia in Macon, which is 20 minutes away.

Attached to the complaint was an expert's affidavit, as required by OCGA § 9-11-9.1 (a); the affidavit was based upon the expert's review of the decedent's medical records. However, no certified medical records were attached to the affidavit, as required by OCGA § 9-11-56 (e).[1] See *Paulin v. Okehi*, 264 Ga. 604, 605, n. 2 (449 SE2d 291) (1994); *Loving v. Nash*, 182 Ga. App. 253, 255 (355 SE2d 448) (1987). Therefore, the medical records were not part of the trial court's record and were unavailable for review on the defendant's motion for summary judgment.

The defendant's answer denied any professional negligence on his part and further asserted that his acts or alleged omissions in rendering treatment did not cause or contribute to the decedent's demise. The defendant moved for summary judgment on February 7, 1996, asserting that the plaintiff had failed to present any evidence of proximate causation. See OCGA §§ 51-1-27; 51-12-8; *Goggin v. Goldman*, 209 Ga. App. 251, 252-253 (433 SE2d 85) (1993); *Hawkins v. Greenberg*, 166 Ga. App. 574, 575 (1) (a) (304 SE2d 922) (1983).

On February 28, 1997, the trial court held a hearing on the motion, which was granted on June 25, 1997. In its order, the trial court found that there was "no competent evidence to a reasonable degree of medical probability that the death of plaintiff's husband was caused by the defendant or could have been prevented by him." It is from this order that the plaintiff appeals.

1. In her first enumeration of error, the plaintiff asserts that the trial court erred in granting summary judgment to the defendant after finding that there was no competent evidence that the defendant's actions proximately caused the decedent's death.

"To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. OCGA § 9-11-56 (c). A *defendant* may do this by showing the court that the documents, affidavits, depositions and other evidence *in the record* reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." (Emphasis supplied in part.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

---

[1] This issue was not raised on appeal and will not be considered herein.

"Under the statutory definition of medical malpractice, a person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which recovery may be had. OCGA § 51-1-27. . . . Thus, there are three essential elements imposing liability upon which recovery is bottomed: (1) the duty inherent in the doctor-patient relationship; (2) breach of that duty by failing to exercise the requisite degree of skill and care; and (3) *that this failure be the proximate cause of the injury sustained.* Negligence alone is insufficient to sustain recovery.[2] It must be proven that the injury complained of proximately resulted from such want of care or skill. A bare possibility of such result is not sufficient. Additionally, there can be no recovery for medical negligence involving an injury to the patient where there is no showing to any reasonable degree of medical certainty that the injury could have been avoided." (Citations and punctuation omitted; footnote and emphasis supplied.) *Goggin v. Goldman,* supra at 252-253, quoting *Hawkins v. Greenberg,* supra at 575; OCGA § 51-12-8; *Abdul-Majeed v. Emory Univ. Hosp.,* 225 Ga. App. 608 (484 SE2d 257) (1997); *Grantham v. Amin,* 221 Ga. App. 458 (471 SE2d 525) (1996); *Dowling v. Lopez,* 211 Ga. App. 578 (440 SE2d 205) (1993); *Maddox v. Houston County Hosp. Auth.,* 158 Ga. App. 283, 284 (279 SE2d 732) (1981); *Parrott v. Chatham County Hosp. Auth.,* 145 Ga. App. 113, 115 (243 SE2d 269) (1978); see also *Watson v. United States,* 346 F2d 52 (5th Cir. 1965). Although it is not necessary for the plaintiff's experts to use the magic words "reasonable degree of medical certainty" in describing the decedent's prospect of survival with appropriate treatment, such prospect must be more than a mere chance or speculation. See *Abdul-Majeed v. Emory Univ. Hosp.,* supra at 609. Instead, there must be "a realistic assessment of the likelihood that the alleged negligence caused the injury or death." Id. (upholding summary judgment where the expert testified that it was "more likely that there was a possibility" that death could have been prevented through proper treatment); *Grantham v. Amin,* supra at 458 (holding that testimony that the defendant's negligence was a "significant contributing cause" of death was insufficient to establish causation); cf. *Lee v. Satilla Health Svcs.,* 220 Ga. App. 885, 888 (470 SE2d 461) (1996) (holding that "overwhelming testimony" that specific treatment would have prevented a patient from getting worse was sufficient to show causation on summary judgment, even when that testimony was based upon the extensive

---

[2] During the summary judgment hearing, the defendant recognized that a jury issue existed as to whether his treatment of the decedent constituted a breach of his duty or otherwise violated professional standards.

professional experience of the expert witness and his colleagues, since no scientific studies on the treatment had been completed).

The evidence in this case, when viewed in favor of the plaintiff as non-movant, shows that one of the plaintiff's experts, Dr. Innes, testified that the decedent would have had an 80 percent chance at survival *under certain circumstances*. On its face, such prognosis clearly would have met the "reasonable degree of medical certainty" standard. There is no indication that this opinion took into consideration the decedent's advanced age, his pre-trauma health status, or the severity of his multiple injuries, including a crushed pelvis; such factors would go to the weight and credibility given such opinion by the jury.

However, Dr. Innes' opinion was based upon a "golden hour" scenario, i.e., where the decedent survives the fall,[3] he arrives at the ER with normal signs of life, his aortic rupture is diagnosed promptly, he is taken to an operating room *immediately*, and he is operated upon within an hour of the injury. Such scenario was factually impossible in this case. Therefore, the plaintiff's evidence places the defendant's negligence outside causation.

The decedent fell at approximately 11:46 a.m. and arrived at the Monroe County Hospital about a half hour later. The defendant recognized that the decedent was severely injured and would require surgery, which was unavailable at that hospital. During his emergency room evaluation, the defendant ordered various diagnostic tests. He subsequently arranged to transport the decedent to a hospital with surgical capacity, and the decedent left Monroe County Hospital at approximately 1:20 p.m., an hour and a half after the fall. The decedent arrived at Upson County Hospital 40 minutes later, well outside the "golden hour." He died at approximately 2:50 p.m.

There is no evidence in the record which indicates that the defendant negligently delayed transferring the patient or that the patient would have or even *could* have been transferred more quickly if he had been diagnosed with the aortic rupture. In fact, neither of the plaintiff's experts criticized the defendant's efforts in securing the necessary tests and arranging for the transfer. Instead, the experts took issue with the decision to send the decedent to Upson County Hospital instead of the Medical Center in Macon, which was a Level One trauma center with greater surgical capacity and was approximately 20 minutes closer.

However, even if the decedent had been transferred to the Medical Center in Macon, he still would have arrived almost *two hours*

---

[3] Notably, both plaintiffs' experts testified that 70 to 80 percent of patients with a ruptured aorta die at the scene of the accident.

after the fall. In addition, triage and surgical preparation would have postponed treatment for several minutes while the surgical team was assembled and the decedent was prepared for emergency thoracic surgery, including the initiation of general anesthesia. As such, Dr. Innes' opinion that surgical treatment *within the "golden hour"* after the trauma would have increased the decedent's chance of survival to 80 percent is irrelevant in this case, when the evidence clearly shows that such treatment was unavailable or factually impossible. Thus, any chance of survival that medical evidence could support has become so attenuated as to be speculative, and any medical malpractice is too remote to be a concurrent cause of death.

Beyond speculation about the effect of surgical intervention within the "golden hour," no evidence was presented which showed that there was any reasonable degree of medical certainty that the decedent would have survived absent the defendant's alleged diagnostic oversight. This was conceded in the deposition of Dr. Innes and by plaintiff's counsel at the summary judgment hearing. In fact, Dr. Innes admitted that he could testify only that appropriate treatment would have "increased the chances of survival" of the decedent. Although the plaintiff's other expert witness, Dr. Kulkarni, opined that the decedent may have had up to a 50 percent chance of survival following surgical repair of his aorta, he admitted that such opinion was just "conjecturing" that did not take into account the decedent's age, state of health, and the possibility of post-operative complications. Such speculation falls far short of meeting the evidentiary standard for establishing causation on summary judgment in a medical malpractice case.[4]

Accordingly, we find that the plaintiff failed to present any evidence of proximate causation, i.e., evidence within a reasonable degree of medical certainty that the decedent would have survived but for the defendant's alleged negligence. There was no error in the trial court's grant of summary judgment to the defendant.

2. Plaintiff's second enumeration of error contends that the trial court failed to consider her expert witness' testimony regarding the effect of treatment within the "golden hour." There is no indication that the trial court, in fact, failed to consider this evidence. Even so, the insufficiency of this evidence was addressed in Division 1, supra.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

---

[4] Compare *Richmond County Hosp. Auth. &c. v. Dickerson*, 182 Ga. App. 601, 602 (356 SE2d 548) (1987) (holding that the defendant hospital's expert opinion evidence that the patient had less than a 50 percent chance of survival regardless of treatment did not automatically disprove causation and upholding the denial of its motion for summary judgment; decided prior to *Lau's Corp. v. Haskins*, supra).

DECIDED MARCH 26, 1998.

*Paul Cames,* for appellant.
*Alston & Bird, Theodore E. G. Pound, Elizabeth Bertschi,* for appellee.