A99A0154, A99A0155. RENFROE v. ARRINGTON; and vice versa.
(519 SE2d 3)

SMITH, Judge.

Joann Renfroe filed a complaint alleging dental malpractice against Ronnie Arrington. The trial court granted summary judgment to Arrington on two of the three counts and denied summary judgment on the remaining count. These appeals followed.

In Case No. A99A0154, Renfroe appeals the trial court's ruling granting summary judgment to Arrington on Count 1, and in Case No. A99A0155 Arrington cross appeals. Because we conclude that Arrington was entitled to summary judgment on all counts of Renfroe's complaint, we affirm the trial court's judgment in Case No. A99A0154, and we reverse its judgment in Case No. A99A0155.

The material facts of this case are essentially undisputed. Arrington performed dental work for Renfroe over a period of several months, beginning in February 1995. After performing a dental

examination and concluding that Renfroe had mild to moderate periodontal disease, either Arrington or his hygienist performed periodontal cleaning, filled teeth, extracted two teeth, and prepared and fitted Renfroe with dentures. Arrington last saw Renfroe in early August 1995. In October 1995, Renfroe was diagnosed with subacute infectious endocarditis. This disease, according to Arrington,

> is an infection of the lining of the heart or the heart valves caused by a blood borne bacteria or other organism. Patients with histories of certain heart problems or rheumatic fever are at risk of [contracting] subacute infectious endocarditis and it is generally considered appropriate to administer an antibiotic as a prophylactic measure prior to undertaking any dental procedure which could cause bleeding.

Renfroe filed this malpractice action, alleging in Count 1 that her illness was caused by Arrington's failure to obtain a proper medical history and to consult a physician as indicated by her available medical history. In Count 2, she alleged that Arrington extracted teeth without a contemporaneous x-ray film to determine whether, and how much, infection existed in the area of her extracted teeth. In a third count, she alleged that Arrington caused her illness by his failure to ensure that her gums were "periodontally sound" before fitting her for dentures. The trial court granted summary judgment to Arrington on Count 1, concluding that even assuming Arrington failed to take a proper medical history, Renfroe did not show how this failure caused her illness. The court also granted summary judgment to Arrington on Count 3, on the ground that Renfroe failed to show that Arrington's alleged failure to ensure that her gums were periodontally sound proximately caused Renfroe's illness. The trial court denied Arrington's motion concerning Count 2, however, concluding that genuine issues of material fact existed.

1. In Case No. A99A0154, the trial court correctly concluded that Renfroe failed to show that Arrington's alleged failure to properly obtain her medical history proximately caused her injuries. This claim involves a medical history portion of a patient information form Renfroe completed during her initial visit with Arrington. The second page of the form asks the following questions: "Do you have or have you had any of the following diseases or problems?" Two columns of blocks appear on the form for the patient to mark "yes" or "no" to the question. Renfroe checked "no" to all boxes in the left-hand column indicating that she had never suffered from rheumatic fever or rheumatic heart disease, congenital heart lesions, cardiovascular disease, high or low blood pressure, anemia or blood disorder, asthma or bronchitis, diabetes, shortness of breath, difficulty in

breathing, and several other diseases. She checked several boxes marked "yes" in the right-hand column, indicating that she had suffered from all the diseases in that column: tuberculosis, nervous condition, goiter or thyroid disease, convulsion or epilepsy, frequent nose bleeds, venereal disease, and serious childhood diseases. During her deposition, however, Renfroe stated that she had mistakenly checked "yes" to these questions. She also failed to answer some questions on the form, such as whether she was allergic to certain drugs, but she stated during her deposition that these questions were left blank because they did not apply to her and that if she had answered the question, the answer would have been "no." Renfroe admitted filling out similar forms for other doctors, indicating that she had no health problems, and she denied ever having rheumatic fever, scarlet fever, or any knowledge of any type of heart problems or serious disease before seeing Arrington.

Also during her deposition, Renfroe explained that she became aware, after she completed Arrington's patient information form, that she had given an inaccurate response concerning whether she had suffered from anemia or blood disorder. She stated that she did not know the meaning of the word "anemia" at the time she filled out the form but that she had been told years before that she suffered from "low" blood. Arrington testified by affidavit, however, that during his initial examination of Renfroe, she did not display any signs of anemia and that "[n]either a history of anemia in the past nor the presence of mild anemia during treatment would require a dentist to provide dental treatment in any manner different from that provided by [me]. A dentist would not prescribe an antibiotic because a patient was anemic."

On motion for summary judgment, Arrington argued that no causal relationship existed between any inadequacy of Renfroe's medical history obtained by him and her illness. In response, Renfroe submitted the affidavit of her expert, Dr. Finkelstein, which incorporated the earlier expert affidavit she filed in compliance with OCGA § 9-11-9.1. In the earlier affidavit, Finkelstein testified that the initial medical history showed that Renfroe suffered from serious illnesses that would have required consultation with a physician before performing any dental work upon Renfroe or "in the alternative, if the medical history given by Ms. Renfroe was inaccurate, Dr. Arrington failed to get a correct and proper medical history." He further stated that Arrington's failure to obtain a proper medical history, among other alleged breaches, "could lead to subacute infectious endocarditis in a patient experiencing treatment such as Ms. Renfroe received from Dr. Arrington."

Finkelstein's second affidavit, filed in response to Arrington's motion for summary judgment, added that Arrington failed to take a

proper and complete medical history

> in that when presented with a person of the educational and economic background of Ms. Renfroe, a dentist should orally go over each question to be sure that said patient understands the question and to annotate in the chart that this was done along with any corrections or additions that the dentist subsequently finds.

In a subsequent affidavit, Finkelstein testified that after questioning a patient concerning his or her medical history, if the patient is unsure about her medial history, a dentist is required "to contact the patient's personal physician prior to any invasive procedures. If the plaintiff has no personal physician, the dentist should require the plaintiff to have a checkup with a physician."

A factual dispute exists as to whether Arrington asked Renfroe, during her initial visit, if all of her responses to the questions on the patient information form were correct. He testified that he did question Renfroe and clarified her responses, while she testified that he did not. We also note that Arrington acknowledged during his deposition, after testifying that he asked Renfroe questions to help clarify and correct her responses, that he should have noted any changes on her record but failed to do so. Arrington, however, still was entitled to summary judgment on this count of Renfroe's complaint, notwithstanding this factual dispute, together with Arrington's failure to update Renfroe's chart, as well as any failure by Arrington to review each individual question with Renfroe and to consult a physician or refer Renfroe to a physician. To prevail on a claim of medical or dental malpractice,[1] a plaintiff must show that the duty inherent in the doctor-patient relationship has been breached and that the breach was the proximate cause of the plaintiff's injury. *Anthony v. Chambless*, 231 Ga. App. 657, 659 (500 SE2d 402) (1998). "Negligence alone is insufficient to sustain recovery. It must be proven that the injury complained of proximately resulted from such want of care or skill. A bare possibility of such result is not sufficient." (Citations, punctuation, and footnote omitted.) Id.

Here, as observed by the trial court in its well-reasoned order, even assuming that Arrington failed to take a proper medical history by failing to question Renfroe about each response on the form and failing to note on the form that her responses were incorrect, Renfroe has not shown how this failure proximately caused her injuries. If

---

[1] The same legal standard that controls the duties of physicians and surgeons controls the duties of dentists to their patients. *Gunthorpe v. Daniels*, 150 Ga. App. 113 (1) (257 SE2d 199) (1979).

Arrington had reviewed each question with Renfroe, he would have learned that she never had the diseases she indicated on the form, with the exception of anemia, obviating the need to refer her to a physician. And it is clear that Renfroe was not unsure or confused concerning her past medical history, with the exception of her history of anemia. As for her anemia, according to Arrington's undisputed testimony, this condition would not have required antibiotics, and Arrington would not have altered his course of treatment.

We note some evidence in the record showing that Renfroe suffered from a heart murmur. It is not clear from the record whether this condition existed before Arrington treated Renfroe or was discovered in October 1995 when Renfroe was diagnosed with subacute infectious endocarditis. But the record *is* clear that Renfroe was not *aware* of this condition, if it existed, when she was treated by Arrington. When Renfroe was hospitalized in October 1995 and diagnosed with subacute infectious endocarditis, she was treated by Dr. Maki. During Renfroe's first visit with Dr. Maki, she told him that she had never suffered from rheumatic fever or scarlet fever. She also admitted that when she saw Dr. Maki, she had no knowledge of having any past heart problems. Dr. Maki's notes contained the following recitation: "[Renfroe] has never heard of having a heart murmur before being identified as having one by her family physician, Dr. Brown." This shows that if Arrington in fact had questioned Renfroe about each illness indicated on the patient information form, he would not have learned from her that she suffered from a heart murmur, even if one existed at the time of Arrington's examination.

Because Renfroe clearly was unaware that she suffered from any of the diseases listed on the patient information form, particularly diseases which could have placed her at risk for contracting subacute infectious endocarditis, she has shown no causal relationship between any improper medical history and her injury, and summary judgment in Arrington's favor was warranted.

*Cherokee County Hosp. Auth. v. Beaver*, 179 Ga. App. 200, 205-206 (345 SE2d 904) (1986), relied upon by Renfroe, is not controlling. In *Beaver*, this court concluded that the defendant's showing in support of its motion for summary judgment was insufficient on the issue of whether its actions proximately caused plaintiff's injuries. Id. at 206. But here, Arrington succeeded in piercing Renfroe's pleadings on the causation issue by showing that she was totally unaware at the time of her initial visit with Arrington of any medical condition identified by Arrington as placing her at risk for subacute infectious endocarditis. As the non-movant on motion for summary judgment, after Arrington pierced her pleadings by showing that no evidence supported the essential element of causation, Renfroe was required to show that genuine issues of fact remained. *Lau's Corp. v. Haskins*,

261 Ga. 491 (405 SE2d 474) (1991). She failed to show a causal connection between any alleged failure to take a proper medical history and her subsequent illness. Her expert's affidavit stating that Arrington's failure to obtain a proper medical history *could* have caused Renfroe's injuries was insufficient; as discussed above, the mere possibility that a defendant's breach of the duty of care caused plaintiff's injuries cannot establish liability. *Chambless*, supra at 659.

2. In Case No. A99A0155, Arrington contends the trial court erroneously denied his motion on Count 2 of Renfroe's complaint. Renfroe alleged in Count 2 that Arrington breached the standard of care by extracting two teeth without taking contemporaneous x-rays "to determine if, and how much, infection existed in the area of the teeth extracted."

In denying summary judgment to Arrington on Count 2, the trial court determined that a question of fact existed as to whether Renfroe suffered from mild to moderate periodontal disease, as stated by Arrington, or from moderate to severe disease, as stated by Finkelstein. The court referred to Arrington's deposition testimony that patients with severe periodontal disease are given antibiotics to protect them from bacteria in the bloodstream. Based on these facts, the trial court concluded that a genuine factual issue existed as to whether Renfroe "suffered from severe periodontal disease that would require a contemporaneous x-ray and the administration of antibiotics which may have prevented" her illness.

We agree with Arrington that the trial court erred in denying summary judgment on this count of Renfroe's complaint. The evidence on which the trial court apparently relied in making its ruling involved Arrington's testimony concerning the treatment of periodontal disease. He testified that he may have prescribed antibiotics to Renfroe if he had determined that her tooth "had an infection other than a periodontal infection." Arrington explained that he might prescribe antibiotics if he saw "visible signs of infection" to protect a patient from "bacteremia," the introduction of bacteria into the bloodstream. He stated that a patient can contract bacteremia from treatment of periodontal disease, and that he knew Renfroe would get bacteremia but did not believe that she would suffer any problem as a result. Arrington acknowledged that he would prescribe an antibiotic for treatment for bacteremia only if a patient's "periodontal disease was fairly severe." He found Renfroe's periodontal disease to be mild to moderate, however, and did not prescribe antibiotics.

Finkelstein's testimony that Renfroe suffered from moderate to severe periodontal disease, which might have required administration of antibiotics, did not create a genuine issue of material fact under the allegations of Renfroe's complaint. Arrington's testimony

concerning the need for antibiotics concerned measures to be taken during the *treatment* of periodontal disease, not those to be taken while extracting teeth. But Count 2 of Renfroe's complaint does not allege that Arrington breached any standard of care concerning treatment of periodontal disease by failing to prescribe an antibiotic.

Even assuming that failure to treat properly Renfroe's periodontal disease was raised by the complaint and that the evidence showed that she suffered from severe periodontal disease, Renfroe has failed to point to competent evidence showing that any failure by Arrington to prescribe antibiotics or to take x-rays contemporaneously with the extraction of her teeth was the proximate cause of her injury.

On motion for summary judgment, Arrington testified by affidavit that he examined Renfroe's teeth before the extractions and found improvement of her periodontal disease and "no evidence of the presence of any infection which would indicate a need for prescribing an antibiotic." After the extractions, he examined the extracted teeth and their sockets, and he testified that "[n]either showed evidence of infection." He also explained the uses of x-rays and the need for antibiotics with respect to the extraction of teeth:

> In the absence of any indication of active infection, it is neither necessary nor appropriate for a dentist to prescribe an antibiotic for the extraction of a tooth. Further, while an x-ray may show an area where an infection could exist, an x-ray cannot confirm or rule out the presence of infection. An x-ray is not an appropriate study for that purpose.

In response, Renfroe submitted the affidavit of her expert, Finkelstein, in which Finkelstein incorporated his earlier OCGA § 9-11-9.1 affidavit, and stated that the x-rays available to Arrington "were not adequate to perform" the extraction of Renfroe's teeth. Finkelstein's previous affidavit recited that Arrington breached the standard of care by failing to perform x-rays contemporaneously with Renfroe's extractions to determine whether infection existed and whether antibiotics were required and that this breach could lead to the injuries sustained by Renfroe.

Arrington pierced Renfroe's pleadings by introducing evidence that he saw no signs of infection in the area of the extracted teeth either before or after they were extracted and that an x-ray could not confirm or rule out the presence of an infection. The evidence submitted by Renfroe in response to Arrington's motion was insufficient to create a genuine issue of material fact. First, Finkelstein testified only that the alleged breach associated with the failure to take contemporaneous x-rays "could" lead to subacute infectious endocarditis, and as discussed above, the mere possibility that a plaintiff was

injured as a result of a defendant's alleged breach of the standard of care is insufficient to sustain a claim for medical malpractice. *Chambless*, supra at 659. See also *Abdul-Majeed v. Emory Univ. Hosp.*, 225 Ga. App. 608 (484 SE2d 257) (1997) (summary judgment to hospital affirmed when plaintiff's expert testified only that possibility existed that decedent's death could have been prevented through use of measures in addition to medication).

The evidence in this case was uncontradicted that the area of Renfroe's extractions did not show signs of infection requiring administration of antibiotics and that an x-ray of these teeth made prior to extraction would not have been used in any event to determine whether infection existed. Furthermore, the only evidence that failure to take x-rays contemporaneously with Renfroe's extractions caused her subsequent illness was purely speculative and conjectural in nature. Under these circumstances, Arrington was entitled to summary judgment on Count 2 of Renfroe's complaint.

*Judgment affirmed in Case No. A99A0154. Judgment reversed in Case No. A99A0155. Pope, P. J., and Eldridge, J., concur.*

DECIDED MAY 24, 1999 —
RECONSIDERATION DENIED JUNE 9, 1999.

*Brimberry, Kaplan & Brimberry, Jerry W. Brimberry, Jr., Howard J. Stiller*, for appellant.

*Hodges, Erwin, Hedrick & Coleman, William A. Erwin*, for appellee.