A01A0056. PURCELL et al. v. BREESE et al.
(552 SE2d 865)

PHIPPS, Judge.

As a result of their son Jonathan's suicide, Janet and John Breese filed a wrongful death action against Kennestone Hospital, Dr. John Purcell and social worker Honey Caplan. They asserted claims for general and professional negligence. Purcell moved for summary judgment, claiming that his alleged negligence was not the proximate cause of Jonathan's death, that he owed no duty to Jonathan at the time of his death because their doctor-patient relationship had been severed and that he is immune from suit for failing to admit Jonathan involuntarily to Kennestone because there has been no showing of bad faith on his part. The trial court denied Pur-

---

cell's motion, finding that there are genuine issues of material fact regarding whether Purcell owed a duty to or had control over Jonathan and whether Jonathan's release from Kennestone without further treatment was the proximate cause of his death. The trial court certified the matter for immediate review, and we granted Purcell's application for interlocutory appeal. We affirm.

In 1991, Jonathan and his family moved from Wisconsin to Atlanta. When his parents divorced two years later, he went to live with his father and his father's new wife. In 1994, Jonathan began to have suicidal thoughts. In May 1995, he expressed an intention to kill himself to his high school counselors at Walton High in Marietta. The counselors met with Jonathan and his parents to discuss Jonathan's suicidal thoughts.

In July 1995, Jonathan began living with his mother and sister. During that summer, he made more than one suicidal threat.

On August 27, 1995, Jonathan and his mother got into an argument, and he pushed her. She filed a police report, and he was arrested. The police gave Jonathan the option of going either to juvenile detention or to Kennestone Hospital for evaluation and treatment. Jonathan chose to be voluntarily admitted to Kennestone's psychiatric unit. He was admitted on August 27, 1995. He was 15 years old.

While at Kennestone, Jonathan was treated by Purcell and Caplan. He reported to hospital officials that he had previously attempted suicide by placing a loaded gun into his mouth or to his head and pulling the trigger but that he had survived because the gun had misfired. Jonathan also told hospital officials about his history of drug use, including intravenous heroin, hallucinogenic drugs, marijuana and alcohol. He told them that during the months prior to his admission, he had used acid and marijuana. Jonathan told Caplan that he "hear[d] voices" that told him bad things about himself and that he had occasional visual hallucinations. He also told her that he was not presently suicidal, but that he always thought about it.

On August 30, 1995, Caplan called Jonathan's mother and asked her to come to Kennestone to meet with her and Jonathan. When she arrived, Jonathan was upset and agitated because he believed that Caplan had divulged to other hospital personnel something he had told her in confidence.[1]

Jonathan demanded to be discharged from Kennestone, and his mother agreed because she did not believe he would be cooperative in

---

[1] After Jonathan was discharged, his mother learned that the sensitive information was the fact that Jonathan was "hearing voices."

any further treatment. Caplan reached Purcell by telephone, and he authorized Jonathan's discharge that day, without meeting with or talking with Jonathan. Purcell did not see or treat Jonathan after August 30, 1995. In her August 30 notes, Caplan wrote that she believed Jonathan desperately needed treatment but that he had refused to consider obtaining outpatient treatment from other facilities she had suggested. She also noted that Jonathan admitted that he constantly thought about suicide.

When they returned home, Jonathan and his mother discussed the possibility of further counseling, but he never received any. On October 24, 1995, Jonathan's mother went to Toronto on a business trip and left him home alone. While she was gone, Jonathan committed suicide.

In support of their claims, the Breeses submitted an expert affidavit from Dr. Kenneth Tardiff in which he opined that Purcell failed to meet the standard of care of the medical profession generally in his treatment of Jonathan because he failed to (1) closely monitor him prior to his discharge, (2) communicate properly with Jonathan, his mother and Caplan and (3) maintain custody of Jonathan, who should have been hospitalized and treated for his mental illness and drug abuse. Tardiff further opined that at the time of Jonathan's discharge from Kennestone, there was evidence that he was at risk for committing suicide. That evidence included the following:

> Jonathan Shea Breese was psychotic inasmuch as he had reported hearing voices telling him bad things about himself; he had suicidal ideations; he was depressed; he had organic brain impairment; he was a heavy drug user; he had previously attempted to commit suicide; he had a history of noncompliance with treatment; and he had a history of violence toward others along with an indifference toward living.

In support of his motion for summary judgment, Purcell submitted an affidavit in which he stated his conclusions that Jonathan "had suicidal thoughts in the past but was not currently experiencing suicidal ideation" and that, at the time of discharge, he was not an immediate threat to himself or others. He also stated that he had tried to convince Jonathan's mother to allow Jonathan to stay at Kennestone for further treatment but that he could not commit him involuntarily because he did not have present suicidal or homicidal ideations.

1. Purcell argues that the trial court should have granted his motion for summary judgment because there is no evidence that his care of Jonathan led to Jonathan's suicide.

As a general rule,

> "negligence [cases] are susceptible to summary adjudication only in plain, palpable and indisputable cases; the evidence must be construed most favorably to the party opposing the motion, and he must be given the benefit of all favorable inferences and reasonable doubts which may arise from the evidence. Summary judgment may be granted only where, construing all inferences against the movant, it yet appears without dispute that the case can have but one outcome and that outcome must be in the movant's favor."[2]

Questions of proximate cause ordinarily are reserved solely for the jury and should not be resolved as a matter of law except in plain and indisputable cases.[3] This is not such a case.

All tests used to determine the issue of proximate cause " 'envision some reasonable apprehension of harm.' "[4] Construed against Purcell, the evidence and inferences drawn therefrom show that, when he was released, Jonathan was at risk for committing suicide and had no intention of obtaining outpatient treatment. In light of these factors, Purcell's decision to release him without talking with him, seeing him or reviewing the most recent entries in his record created a reasonable apprehension of harm sufficient to withstand summary judgment.[5]

2. Relying on *Matthews v. DeKalb County Hosp. Auth.*,[6] Purcell argues that he had no duty to protect Jonathan after his discharge because the doctor-patient relationship had been voluntarily terminated by Jonathan's mother, as Jonathan's guardian. *Matthews*, however, was based on a lack of proximate cause between the hospital's classification of a patient's condition as nonlife-threatening and her death two days later, after she voluntarily left the hospital without obtaining treatment.[7] As set forth in Division 1, we find summary judgment is inappropriate on the issue of proximate cause.

Purcell does not dispute that a doctor-patient relationship existed at the time the allegedly negligent acts occurred, during Jonathan's treatment and at the time of his discharge. The fact that

---

[2] (Citations omitted.) *Sykes v. Colony Regency Partners*, 226 Ga. App. 804, 806 (487 SE2d 408) (1997).

[3] *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 67 (2) (d) (397 SE2d 576) (1990); *Atlanta Gas Light Co. v. Mills*, 78 Ga. App. 690, 695 (1) (51 SE2d 705) (1949).

[4] *Brandvain v. Ridgeview Institute*, 188 Ga. App. 106, 115 (3) (b) (372 SE2d 265) (1988).

[5] See id. at 116 (3) (b) (if the intervening act of suicide " 'is a reasonably foreseeable consequence of the defendant's negligent conduct, the legal, causal connection between that conduct and injury is not broken.' [Cit.]").

[6] 211 Ga. App. 858 (440 SE2d 743) (1994).

[7] Id. at 859 (1).

the relationship had been severed prior to Jonathan's death does not entitle Purcell to summary judgment.

3. Purcell claims that he had no duty to prevent harm to Jonathan because Jonathan was not under Purcell's control at the time of his suicide. He argues that *Bradley Center v. Wessner*[8] sets forth a test for determining whether a treating physician can be held liable for the acts of a mental patient and that the test requires that the physician have physical control over the patient at the time of the incident.

The issue in *Bradley Center v. Wessner* was whether a mental health hospital could be held liable for the death of a third party at the hands of one of its patients based on evidence that it had failed to exercise reasonable care in controlling the patient's conduct while the patient was on a weekend pass from the hospital, where no privity had existed between the decedent and the hospital. Here, privity did exist between Jonathan and Purcell at the time of the allegedly negligent acts. Thus, the *Bradley Center* theory of liability is not applicable.[9]

4. Purcell argues that, under OCGA § 37-3-4, he is entitled to immunity from suit for Jonathan's discharge because there is no evidence that he acted in bad faith. That statute provides, in relevant part, that a hospital physician who acts in good faith in compliance with the admission and discharge provisions of this chapter shall be immune from civil or criminal liability for his actions in connection with the admission or discharge of a patient from the hospital.

In *Poss v. Ga. Regional Hosp.*,[10] the district court found this statutory immunity applicable to medical negligence claims against a physician for discharging a mental patient who later committed suicide. Thus, it appears that the statute is applicable to the Breeses' claims against Purcell.

We now consider whether Purcell is entitled to summary judgment on this issue. Good faith has been defined as " 'a state of mind indicating honesty and lawfulness of purpose; belief that one's conduct is not unconscionable or that known circumstances do not require further investigation.' "[11] Ordinarily, good faith is a question for the jury based on a consideration of the facts and circumstances of the case.[12] But summary judgment is appropriate in cases where no evidence supports a finding of lack of good faith.[13]

---

[8] 250 Ga. 199 (296 SE2d 693) (1982).

[9] *Ga. Osteopathic Hosp. v. O'Neal*, 198 Ga. App. 770, 773 (3) (403 SE2d 235) (1991).

[10] 676 FSupp. 258, 261-262 (S.D. Ga. 1987).

[11] *Anderson v. Little &c. Funeral Home*, 242 Ga. 751, 753 (1) (251 SE2d 250) (1978), citing Webster.

[12] *Hodges v. Youmans*, 129 Ga. App. 481, 483 (3) (200 SE2d 157) (1973).

[13] *Poss*, 676 FSupp. at 262.

Jonathan was admitted to Kennestone under OCGA § 37-3-20 (a), which provides that

> [t]he chief medical officer of any facility may receive for observation and diagnosis any patient 12 years of age or older making application therefor, any patient under 18 years of age for whom such application is made by his parent or guardian. . . . If found to show evidence of mental illness and to be suitable for treatment, such person may be given care and treatment at such facility; and such person may be detained by such facility until discharged pursuant to Code Section 37-3-21. . . .

Pursuant to OCGA § 37-3-21 (a), no voluntary patient shall be discharged if, in the judgment of the chief medical officer of the facility, such discharge would be unsafe for the patient or others. If a voluntary patient or his legal guardian requests a discharge in writing at any time after his admission, the patient must be discharged within 72 hours of the written request, unless the chief medical officer finds that the discharge would be unsafe for the patient or others.[14]

The Breeses argue that Purcell violated all of these Code sections by failing to detain Jonathan against his will when he knew or should have known that Jonathan posed a serious threat to himself.[15] As evidence of bad faith, they point to Purcell's failure to examine or talk with Jonathan prior to his discharge or to review the August 30 notes in Jonathan's file, which included Caplan's assessment that Jonathan was in desperate need of treatment, Jonathan's admission that he constantly thought about suicide and Jonathan's refusal to consider outpatient treatment at other facilities. They also claim that Purcell failed to return several telephone calls from Jonathan's mother.

Based on Purcell's failure to examine Jonathan, speak with him or review the most recent notes in his file prior to authorizing his discharge, we cannot find as a matter of law that he complied in good faith with the applicable Code sections.

*Judgment affirmed. Pope, P. J., Barnes and Mikell, JJ., concur. Blackburn, C. J., Andrews, P. J., and Smith, P. J., dissent.*

SMITH, Presiding Judge, dissenting.

Although the facts of this case are heart wrenching and tragic, I do not believe that the plaintiffs established that Purcell's actions or inactions proximately caused the suicide of Jonathan Breese.

---

[14] OCGA § 37-3-22 (a).
[15] They also note that Jonathan's discharge request was never put in writing.

A plaintiff seeking to impose liability for medical malpractice must show that the defendant breached the duty inherent in the doctor-patient relationship by failing to exercise the requisite degree of skill and care and that this breach was the proximate cause of the injury. *Anthony v. Chambless*, 231 Ga. App. 657, 659 (1) (500 SE2d 402) (1998). And

> [n]egligence alone is insufficient to sustain recovery. It must be proven that the injury complained of proximately resulted from such want of care or skill. A bare possibility of such result is not sufficient. Additionally, there can be no recovery for medical negligence involving an injury to the patient where there is no showing to any reasonable degree of medical certainty that the injury could have been avoided.

(Citations, punctuation and footnote omitted.) Id.

The professional affidavit attached to the complaint in this case does recite that Purcell breached the standard of care of the medical profession generally in his care and treatment of Jonathan Breese. Missing from the affidavit, however, is a showing that Jonathan's death was proximately caused by any breach of duty by Purcell. And more importantly, the record does not *otherwise* show to a reasonable degree of medical certainty that the suicide could have been avoided or that Purcell proximately caused the suicide. The suicide occurred two months after Jonathan's release, during which time he expressed suicidal thoughts to his mother, who had been encouraged to seek psychiatric help for Jonathan. She failed to do this and even left him alone for two nights after he mentioned the prospect of suicide. At best, the plaintiffs established only a possibility that Purcell's actions were the proximate cause of Jonathan's death. This was not enough. It is true that we have stated that "the phrase 'reasonable medical certainty' . . . is neither magic nor particularly helpful." (Citation omitted.) *Abdul-Majeed v. Emory Univ. Hosp.*, 225 Ga. App. 608, 609 (484 SE2d 257) (1997), overruled on other grounds, *Ezor v. Thompson*, 241 Ga. App. 275, 279 (526 SE2d 609) (1999). Instead, "[w]hat courts and juries need from medical experts is not a simple recitation of these words, but a realistic assessment of the likelihood that the alleged negligence caused the injury or death." *Abdul-Majeed*, supra. Here, the record falls short of showing such a "realistic assessment" of causation, and summary judgment in Purcell's favor was warranted.

I am authorized to state that Chief Judge Blackburn and Presiding Judge Andrews join in this dissent.

DECIDED JULY 9, 2001 — 

*Webb, Carlock, Copeland, Semler & Stair, Mary Katherine Greene, Alwyn R. Fredericks*, for appellants.

*Orlando & Kopelman, Richard Kopelman, Browning & Tanksley, Henry D. Green, Jr.*, for appellees.