A06A1879. MIRANDA et al. v. FULTON DEKALB HOSPITAL AUTHORITY et al.
(644 SE2d 164)

MIKELL, Judge.

Diego Garcia's parents and the administrator of his estate (hereinafter referred to collectively as the "Mirandas") brought this malpractice action for Garcia's wrongful death, asserting that the hospitals and their physicians[1] failed to keep a sufficient watch on

---

[1] Appellees are Fulton DeKalb Hospital Authority d/b/a Grady Memorial Hospital and

Garcia, resulting in his death by suicide the next day. A jury trial was held and, at the close of the Mirandas' evidence, the trial court directed a verdict for appellees. The Mirandas then brought this appeal, asserting that the trial court erred in granting appellees' motion for directed verdict and in refusing to admit certain evidence at trial pertaining to the standard of care. For the reasons set forth below, we affirm.

The record reflects that on the morning of May 10, 2001, police were summoned to a QuikTrip service station ("QT"), where Garcia, a 25-year-old college student, was acting strangely. According to the responding officer, Garcia seemed disoriented and mentioned thinking about hurting himself and others. After talking to Garcia, the officer took him to the DeKalb Crisis Center ("DCC"). At Garcia's request, the officer did not impound Garcia's car, as was the usual procedure, but instead left the car locked in the QT parking lot and gave Garcia the keys. After Garcia was interviewed by members of the DCC staff, he was transferred to the emergency room at Grady Memorial Hospital ("Grady") for "medical clearance," that is, to ascertain if Garcia's mental problems had a medical basis, such as an injury to the brain. At Grady, Garcia was examined by Dr. Jannie Barkhuizen, an appellee herein, who noted that Garcia was "verbalizing suicidal ideation." Garcia was placed in soft wrist restraints pending transfer to Grady's psychiatric unit. He was checked approximately every 15 minutes by various members of the Grady medical and nursing staff, but he was not put under continuous observation, in accordance with Grady's policy that a patient under restraint be checked every 15 minutes. Garcia was last seen by the nursing staff at Grady at 3:35 p.m.; shortly thereafter, a nurse discovered that Garcia was missing. Garcia had slipped his restraints and left the hospital. At some time after Garcia walked out of Grady's emergency room, he retrieved his car from the QT parking lot and drove approximately 335 miles, ending up on Interstate 95 in North Carolina, just past the South Carolina border. At about 6:30 a.m. the next day, May 11, 2001, Garcia left his car in the emergency lane of the highway and committed suicide by running in front of a northbound Ford Expedition.

1. A motion for directed verdict can be granted only "[i]f there is no conflict in the evidence as to any material issue and the evidence

---

d/b/a Grady Health System (herein referred to as "Grady"); Emory University; Emory Medical Care Foundation, Inc.; Philip Shayne, M.D.; and Jannie K. Barkhuizen, M.D. Defendants Deneen Lewis and Elva Tolbert have been dismissed from this action and are not parties to this appeal.

introduced, with all reasonable deductions therefrom, shall demand a particular verdict."[2] Thus, a motion for directed verdict

> may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, [a directed verdict] should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the [nonmovant]. And this approach governs the actions of appellate courts as well as trial courts.[3]

With regard to medical malpractice claims, three elements are essential: first, the duty of the doctor to his patient; second, the doctor's breach of that duty through the failure to exercise the requisite degree of skill and care; and third, "that this failure be the proximate cause of the injury sustained."[4]

> It must be proven that the injury complained of proximately resulted from such want of care or skill. A bare possibility of such result is not sufficient. Additionally, there can be no recovery for medical negligence involving an injury to the patient where there is no showing to any reasonable degree of medical certainty [or probability[5]] that the injury could have been avoided.[6]

In the case at bar, without ruling on the presence or absence of the first two elements (duty and breach of that duty), we agree with the

---

[2] OCGA § 9-11-50 (a); see *Maddox v. Houston County Hosp. Auth.*, 158 Ga. App. 283, 284 (279 SE2d 732) (1981) (directed verdict for defendant doctor affirmed where plaintiffs failed to adduce evidence that hospital's actions caused the decedent's death from acute alcoholism or that his death could have been avoided).

[3] (Citations and punctuation omitted.) *Goggin v. Goldman*, 209 Ga. App. 251, 252 (433 SE2d 85) (1993) (motion for judgment notwithstanding a mistrial is analogous to motion for directed verdict or motion for judgment notwithstanding the verdict).

[4] *Hawkins v. Greenberg*, 166 Ga. App. 574, 575 (1) (a) (304 SE2d 922) (1983). See also OCGA § 51-1-27 ("[a] person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had").

[5] See *Zwiren v. Thompson*, 276 Ga. 498, 502-503 (578 SE2d 862) (2003) (a medical expert's statement of proximate cause as being merely possible, as opposed to reasonably probable, is insufficient to establish liability).

[6] (Citations and punctuation omitted.) *Anthony v. Chambless*, 231 Ga. App. 657, 659 (1) (500 SE2d 402) (1998).

trial court that the Mirandas have failed to present any evidence showing the third element — proximate cause.

In *Zwiren v. Thompson*,[7] the Supreme Court of Georgia noted that "[i]t is clear that a plaintiff cannot recover for medical malpractice, even where there is evidence of negligence, unless the plaintiff establishes by a preponderance of the evidence that the negligence either proximately caused or contributed to cause plaintiff harm."[8] Thus, the Mirandas had the burden of proving at trial that appellees' negligence proximately caused the death of Garcia and that his death would not otherwise have occurred. Even though "proximate cause is undeniably a jury question,"[9] nonetheless, in "plain and palpable" cases, the lack of proximate cause can be determined by the trial court as a matter of law.[10]

Here, the Mirandas' expert, Dr. Dave Davis, testified that continuous monitoring would have made Garcia's escape from Grady less "probable" and "much more difficult," although he could not say that, with continuous monitoring, Garcia would not have escaped. Dr. Davis also testified that a patient suffering from symptoms such as those exhibited by Garcia could "very likely" be successfully treated and that the treatment rate for psychotics to achieve remission in their disease was "in the 85 percent range." However, Dr. Davis's only testimony concerning the injury that occurred here, that is, Garcia's death, was that with continuous monitoring at Grady, Garcia's later suicide would have been "a lot less likely."

Under a different set of facts, the Mirandas' expert's testimony that Garcia's later suicide would have been "a lot less likely" might arguably satisfy the legal requirement that proximate causation be shown to a reasonable degree of medical probability. But in the case at bar, the lack of continuous monitoring at Grady on May 10, 2001, was too remote as a matter of law to be the proximate cause of Garcia's suicide in North Carolina on May 11, 2001.[11]

---

[7] Supra.

[8] (Citations and punctuation omitted.) Id. at 500.

[9] (Citations and punctuation omitted.) Id.

[10] See *Morris v. Baxter*, 225 Ga. App. 186, 187 (483 SE2d 650) (1997) (decedent's suicide was "clearly and palpably" not caused by defendant's negligence). Accord *Berrell v. Hamilton*, 260 Ga. App. 892, 896 (581 SE2d 398) (2003) (summary judgment for doctor affirmed where plaintiff failed to show that doctor did anything or failed to do anything that caused plaintiff's eye infection). Compare *Walker v. Giles*, 276 Ga. App. 632, 639-641 (1) (624 SE2d 191) (2005) (directed verdict for defendants reversed where plaintiffs came forward with some evidence that rupture of plaintiff's appendix could have been avoided by proper care).

[11] See *Anthony*, supra at 661 (1) (alleged medical malpractice was "too remote to be a concurrent cause of death"), cited with approval in *Zwiren*, supra at 502; accord *Berrell*, supra (plaintiff did not establish that his injury could have been avoided).

Dr. Davis testified that, even with continuous monitoring at Grady, Garcia's suicide could have been unpreventable and could have occurred anyway.[12] Dr. Davis's equivocal testimony demonstrates that the causal connection between events at Grady and later events in North Carolina was attenuated at best.[13] In the present case, as in our 1997 decision in *Morris*,[14] the causal connection between the negligence and Garcia's death was "too remote for the law to countenance a recovery."[15] The trial court properly directed a verdict for appellees.

2. The Mirandas' attempt to characterize their claim as one founded on ordinary negligence, rather than medical malpractice, must also fail as a matter of law. Only through the testimony of a medical expert could the Mirandas attempt to draw a connection between appellees' allegedly negligent failure to monitor Garcia continuously in Atlanta and his death by suicide on a highway in North Carolina the next day. The need for the medical expert in a medical malpractice action has been explained by the Supreme Court of Georgia in this way:

> In order to establish proximate cause by a preponderance of the evidence in a medical malpractice action, the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson. Using the specialized knowledge and training of his field, the expert's role is to present to the jury a realistic assessment of the likelihood that the defendant's alleged negligence caused the plaintiff's injury.[16]

The Mirandas can only prove causation through the use of such expert testimony; thus, they have stated a claim for medical malpractice rather than ordinary negligence.

---

[12] See *Anthony*, supra (summary judgment for doctor affirmed where plaintiff failed to show a reasonable medical probability that decedent would have survived a ruptured thoracic aorta absent defendant's alleged negligence).

[13] See *Goggin*, supra at 253 (plaintiff in medical malpractice action failed to present evidence that his kidney could have been saved had defendant discovered sooner the blood clot blocking circulation to it); *Anthony*, supra at 659.

[14] Supra.

[15] (Citation and punctuation omitted.) Id. at 188 (even though defendant knew that decedent was schizophrenic, summary judgment for defendant affirmed because causal connection between defendant's leaving his loaded rifle in plain view in his bedroom and decedent's use of the rifle to commit suicide was "too remote").

[16] (Citations omitted.) *Zwiren*, supra at 500-501.

The Mirandas' reliance on *Purcell v. Breese*,[17] *Brandvain v. Ridgeview Institute*,[18] and *Bradley Center v. Wessner*[19] is misplaced. In *Purcell*[20] and *Bradley*,[21] the defendant medical care providers deliberately released patients who had clearly and repeatedly expressed suicidal (or homicidal) intentions to the defendant doctor. In *Brandvain*,[22] the decedent committed suicide on the hospital premises while he was an admitted patient at the defendant hospital. The circumstances of the case at bar differ dramatically from these and other cases relied upon by the Mirandas.[23] Here, there was no long-standing relation between the Grady medical staff and Garcia. Further, appellees did not release Garcia from Grady's facility; instead, Garcia left the Grady emergency room without permission and despite being restrained.

Because the Mirandas have failed to present evidence of causation, the trial court did not err in directing a verdict for appellees.

3. In light of our ruling in Division 1 above, we do not need to address the Mirandas' remaining enumerations of error, which concern evidentiary issues with regard to the standard of care.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 14, 2007 — 

*A. Thomas Stubbs, David A. Webster*, for appellants.

---

[17] 250 Ga. App. 472 (552 SE2d 865) (2001).

[18] 188 Ga. App. 106 (372 SE2d 265) (1988), aff'd, *Ridgeview Institute v. Brandvain*, 259 Ga. 376 (382 SE2d 597) (1989).

[19] 250 Ga. 199 (296 SE2d 693) (1982).

[20] Supra at 472-474 (denial of doctor's motion for summary judgment affirmed where doctor authorized discharge of fifteen-year-old patient with a history of substance abuse, suicide threats, and at least one suicide attempt over the four months prior to his discharge, and patient subsequently committed suicide).

[21] Supra at 199-200 (jury verdict against mental health clinic affirmed where clinic had treated Wessner for over two months, clinic staff knew that he intended harm to his wife, and staff nonetheless released Wessner on an unrestricted weekend pass, during which time he murdered his wife).

[22] Supra at 108-111 (j.n.o.v. for defendant hospital reversed where drug-addicted, agitated, angry patient who defendant knew had already made several suicide attempts committed suicide after several days as a patient in defendant hospital).

[23] E.g., *Lane v. Tift County Hosp. Auth.*, 228 Ga. App. 554, 558 (1) (b), 559 (1) (c) (492 SE2d 317) (1997) (physical precedent only) (summary judgment for defendant hospital reversed where plaintiff presented evidence that decedent's broken neck resulted from hospital's negligent care while plaintiff was a patient at the hospital); *Emory Univ. v. Lee*, 97 Ga. App. 680, 690-691 (1), 693 (1) (104 SE2d 234) (1958) (physical precedent only) (denial of j.n.o.v. for defendant hospital affirmed where mentally deranged patient exhibited extreme agitation and mental disorder for several hours before finally jumping out window at hospital, and hospital staff took no action to restrain him).

*Thomas, Kennedy, Sampson & Patterson, Thomas G. Sampson II, Jeffrey E. Tompkins*, for appellees.