A07A0877. ALLEN v. FAMILY MEDICAL CENTER, P.C.
(652 SE2d 173)

MIKELL, Judge.

In this medical malpractice action, Zenna Allen appeals the trial court's order granting summary judgment to appellee Family Medical Center, P.C. (the "Medical Center"), wherein the trial court concluded that the expert affidavit filed contemporaneously with Allen's complaint did not establish causation to a reasonable degree of medical probability. In the order granting summary judgment, the trial court also granted the co-defendant's motion to dismiss for lack of service, but that portion of the order has not been appealed. Therefore, the portion of the order that grants the motion to dismiss is affirmed. For reasons stated below, however, we reverse the grant of summary judgment to the Medical Center.

> On appeal from a grant of a motion of summary judgment, we review the evidence de novo, viewing it in the light most favorable to the non-movant, to determine whether the trial court erred in concluding that no genuine issue of fact remains and that the moving party is entitled to judgment as a matter of law.[1]

---

[15] *Woods v. State*, 233 Ga. 495, 498 (II) (212 SE2d 322) (1975).

[16] *Torres v. State*, 272 Ga. 389, 390 (2) (529 SE2d 883) (2000).

[1] (Footnote omitted.) *Gibson v. Thompson*, 283 Ga. App. 705 (642 SE2d 366) (2007); see also OCGA § 9-11-56 (c).

So viewed, Allen alleged in her complaint that she went to the Medical Center complaining of pain in her foot; that she was examined by Dr. Jay Schlossberg,[2] who instructed his nurse to give Allen an intramuscular injection of a steroid, Depomedrol; and that the nurse injected the drug into her left arm, causing her to sustain permanent nerve damage. With her complaint, Allen filed the affidavit of Linda J. Caldwell, a registered nurse, who opined, among other things, that the defendants deviated from the standard of care in administering the injection to Allen's deltoid muscle.

Caldwell averred that it was her professional opinion that the injection administered to Allen "did not satisfy the standard of care exercised by the medical profession, generally under similar conditions and like surrounding circumstances"; and that the standard of care required that defendants,

> prior to administering the injection, decide the most appropriate location to make the injection, whether into the deltoid muscle or the gluteal muscle, taking into consideration the patient's age, weight, skin "tugor" of the patient, and the type of medication to be administered; then take into consideration the location of the deltoid muscle, to fix its location, and not just "eyeball" its location, prior to the injection, considering the patient's arm size, whether skinny, average, or obese, then select the size of the needle prior to the injection. The standard of care, at minimum, required that the aforementioned factors be considered before administering the injection at a 90-degree angle approximately two inches below the acromial process into deltoid muscle at a depth so as to not come in contact with the major brachial plexuses nerves in the upper arm of the patient.

Caldwell further averred that the defendants failed to take the necessary precautions described above "to avoid an injection into a nerve located in the area of the left deltoid muscle [and the failure to do so] constituted a deviation from the standard of care"; and that it was her professional opinion, "that if Zenna Allen had received an injection only into her left deltoid muscle consistent with the applicable standard of care, as set out above, when seen and treated by the Defendants, her present condition could have been avoided" and that "the deviations from the standard of care . . . as described above in the

---

[2] Schlossberg was initially named as a defendant in the action but was dropped as a party pursuant to a consent order.

administration of an injection into the left deltoid, proximately caused Zenna Allen's injuries."[3]

The Medical Center filed a motion for summary judgment, attaching in support thereof an affidavit from Schlossberg, in which he identified the person giving the injection as his certified medical assistant, defendant Lisa Fielding,[4] and averred that he saw Fielding administer the injection to Allen's left arm; that Fielding met the applicable standard of care when administering the injection; and that the injection was not the proximate cause of any injury to Allen. Allen did not respond to the motion for summary judgment but relied solely on Caldwell's affidavit to establish professional negligence.

1. "To recover in a medical malpractice case, a plaintiff must show not only a violation of the applicable medical standard of care but also that the purported violation or deviation from the proper standard of care is the proximate cause of the injury sustained."[5] Proof of negligence, alone, is insufficient to sustain recovery.[6] "It must be proven that the injury complained of proximately resulted from such want of care or skill. A bare possibility of such result is not sufficient."[7] "Additionally, there can be no recovery . . . where there is no showing to any reasonable degree of medical certainty that the injury could have been avoided."[8] But the use of the magic words "reasonable degree of medical certainty" is not required.[9] To establish the proximate cause required in a medical malpractice action,

> the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson. Using the specialized knowledge and training of his field, the expert's role is to present to the jury a realistic assessment of the likelihood that the defendant's alleged negligence caused the plaintiff's injury.[10]

---

[3] In response to defendants' motion to dismiss, Allen submitted an amended affidavit in which she specified that the "nurse employee" was the person who committed the professional negligence.

[4] Co-defendant Fielding was dismissed for lack of service of process.

[5] (Citation omitted.) *Berrell v. Hamilton*, 260 Ga. App. 892, 896 (581 SE2d 398) (2003).

[6] *Anthony v. Chambless*, 231 Ga. App. 657, 659 (1) (500 SE2d 402) (1998). Accord *Renfroe v. Arrington*, 238 Ga. App. 470, 473 (1) (519 SE2d 3) (1999).

[7] (Footnote omitted.) *Anthony*, supra.

[8] (Citation omitted.) *Goggin v. Goldman*, 209 Ga. App. 251, 253 (433 SE2d 85) (1993); *Anthony*, supra.

[9] *Cannon v. Jeffries*, 250 Ga. App. 371, 373 (1) (551 SE2d 777) (2001), citing *Anthony*, supra.

[10] (Citations omitted.) *Zwiren v. Thompson*, 276 Ga. 498, 500-501 (578 SE2d 862) (2003). Accord *Jones v. Orris*, 274 Ga. App. 52, 56-57 (2) (616 SE2d 820) (2005).

In the instant case, the trial court relied on Caldwell's averment that the injury "could have been avoided" in concluding that the affidavit did not sufficiently establish causation, citing *Cannon v. Jeffries*[11] in support of its conclusion. However, in *Cannon*, we found that summary judgment was warranted because the expert's testimony alleged that the negligence "may have contributed" to the injury and that there were other possible causes of injury that were not attributable to the defendants in that case.[12] This case is not analogous to *Cannon* or others in which the expert's opinion raises the possibility of negligence, which we have held renders his affidavit or testimony insufficient to establish professional negligence.[13] Rather, the language "could have been avoided" in Caldwell's affidavit tracks the well-established rule that "there can be no recovery for medical negligence involving an injury to the patient where there is no showing to any reasonable degree of medical certainty or probability that the injury could have been avoided."[14] In her affidavit, Caldwell explains with specificity the precautions that should have been taken by the employee administering the shot and states that the failure to take these precautions proximately caused Allen's injury. Therefore, the trial court's conclusion that Caldwell's affidavit did not establish a jury issue as to causation is erroneous.

2. Appellee contends that the evidence did not establish that Caldwell was qualified to offer opinion testimony as to causation. Although the Medical Center briefly mentions this argument in its motion for summary judgment, the trial court did not rule on Caldwell's competence in its order granting summary judgment. We find no merit to appellee's argument.

Pursuant to OCGA § 9-11-9.1 (a), an expert's affidavit must set forth specifically at least one negligent act or omission and the factual basis for each such act or omission. The standard for determining an

---

[11] *Supra.*

[12] Id. at 372, 373 (1).

[13] See *Renfroe*, supra at 476 (2) (expert affidavit insufficient because it averred that alleged breach "could" lead to injury suffered); *Estate of Patterson v. Fulton-DeKalb Hosp. Auth.*, 233 Ga. App. 706, 710 (2) (505 SE2d 232) (1998) (expert's assertion that alleged negligence "may have contributed" to injury was legally insufficient to establish causation); *Anthony*, supra at 661 (expert opinion based upon conjecturing, as it did not take into account personal characteristics of the victim, did not establish causation). See generally *Goggin*, supra (affirmed grant of motion for judgment notwithstanding the mistrial where expert testimony only established mere possibility that alleged negligent acts would have prevented the injury).

[14] (Punctuation and footnotes omitted.) *Miranda v. Fulton DeKalb Hosp. Auth.*, 284 Ga. App. 203, 205 (1) (644 SE2d 164) (2007); *Bowling v. Foster*, 254 Ga. App. 374, 378 (1) (a) (562 SE2d 776) (2002). See *Zwiren*, supra at 502-503 (a medical expert's statement of proximate cause as being merely possible, as opposed to reasonably probable, is insufficient to establish liability). See *Anthony*, supra at 659 (1); *Lee v. Satilla Health Svcs.*, 220 Ga. App. 885, 887 (2) (470 SE2d 461) (1996). See also *Goggin*, supra; *Parrott v. Chatham County Hosp. Auth.*, 145 Ga. App. 113, 115 (243 SE2d 269) (1978).

expert's competence to testify is governed by OCGA § 24-9-67.1, and subsection (e) of that statute provides for its applicability to affidavits required under OCGA § 9-11-9.1. OCGA § 24-9-67.1 (c) (2) (A) provides that in medical malpractice actions, the expert must have

> actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in . . . [t]he active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue.

In her affidavit, Caldwell avers that she is employed as a nurse, is familiar with the degree of skills required of nurses and other medical staff in giving intramuscular injections, and that during the course of her own daily nursing duties over the past fifteen years, she has given approximately three to five intramuscular injections per day. In light of Caldwell's experience, we conclude that she was competent to provide expert opinion in this case.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 12, 2007.

*Ralph Washington*, for appellant.
*Misner, Scott & Martin, Steven J. Misner*, for appellee.

