A03A0556. BERRELL v. HAMILTON et al.
(581 SE2d 398)

ADAMS, Judge.

After losing the sight in his right eye as the result of an infection, Lawrence Berrell sued Stephen M. Hamilton, M.D. and Eye Consultants of Atlanta, P.C. for medical malpractice. In a highly detailed and well-reasoned order, the trial court awarded summary judgment to the defendants. Among other findings, the court determined that Berrell failed to offer proof of causation. Although Berrell contends that the trial court erred, we find otherwise and affirm.

On appeal from the grant of summary judgment, this Court conducts a de novo review of the evidence. Entertainment Sales Co. v. SNK, Inc., 232 Ga. App. 669 (502 SE2d 263) (1998). In so doing, we must construe the evidence and all reasonable inferences therefrom in favor of the nonmoving party. Chiaka v. Rawles, 240 Ga. App. 792 (525 SE2d 162) (1999).

When so considered, the evidence shows that Berrell had a medi-

cal history of bilateral glaucoma and underwent several eye surgeries and treatments over a four-year period. Berrell had glaucoma laser treatment of the right eye in July 1994. He also had glaucoma laser treatment of his left eye in August 1994 and again in January 1995. In August 1996, a retinal detachment repair was performed on his right eye. In January 1998, Dr. Hamilton, a board-certified ophthalmologist, removed a cataract, replaced it with an implant lens, and performed a trabeculectomy on his right eye. A trabeculectomy (or "bleb") is an operation in which a hole is created to drain intraocular fluid and relieve intraocular pressure caused by glaucoma. Although alleviating vision-threatening pressure, the bleb leaves a patient more susceptible to infection entering the eye.

After the procedure, Dr. Hamilton checked for leaks in the bleb on January 23, 26 and 30, and February 10 and 16, 1998. Dr. Hamilton also saw Berrell on May 18 and September 30, 1998, and February 2, 1999, but his office notes do not indicate that he checked for leakage on those dates. He testified, however, that he looked for leakage on each subsequent visit regardless of whether his office notations so indicated. Berrell's last office visit with Dr. Hamilton occurred on February 3, 1999, the date on which Berrell's medical expert concluded that Dr. Hamilton committed malpractice by not doing a Seidel test for leakage of the bleb. But, Dr. Hamilton testified that "the bleb was not leaking as of February 3, 1999." On that office visit, Dr. Hamilton did not observe any signs of infection.

More than four months after that office visit and about a year and a half after the bleb procedure, Berrell developed a virulent eye infection while in Panama City, Florida. On June 17, 1999, Berrell sought emergency assistance at the Columbia Gulf Coast Medical Center in Panama City. He told doctors he had been experiencing pain and drainage in his right eye for two days. An ophthalmologic consultation reported "pain, redness, discharge and blurring vision over past 24-36 hrs." Advised that his situation was "extremely serious," Berrell returned to Atlanta where Allen Kozarsky, M.D. examined him at Eye Consultants. Dr. Kozarsky observed "a very red, very . . . angry eye." Dr. Kozarsky testified that by that time, there was already a high probability that Berrell would lose his vision. Dr. Kozarsky explained that when an infection is already inside the eyes, "it just grows like wild fire," and "it is pretty much a done deal." Berrell was then admitted for in-patient treatment at Piedmont Hospital. There, Emilio Lacayo, M.D. noted "acute right eye endophthalmitis." Under History of Present Illness, Dr. Lacayo recorded:

On Tuesday [June 15] he had right eye clear discharge with weeping of the right eye. He denies purulent discharge at

that time. He noticed increased redness of the right eye with photophobia. He noted progressive worsening of these symptoms with decreased vision in the right eye. He was seen in the emergency room in Panama City where he was given some medication and subsequently discharged. He was then evaluated and diagnosed with endophthalmitis and is now admitted for acute treatment and surgery on his right eye.

Berrell underwent a vitrectomy on his right eye. Despite emergency surgery and other intensive medical efforts to save his sight, by August 1999, Berrell no longer had any vision in his right eye.

Berrell alleged that Dr. Hamilton provided negligent treatment and care by "failing to properly recognize and monitor plaintiff's condition, to warn, instruct and advise plaintiff about the nature of his condition and the potential for complications and how to avoid same, and to intervene on a timely basis to prevent the severe infection that ultimately resulted in the loss of his right eye." Berrell's expert, Joseph Citron, M.D., testified that in his professional opinion, Dr. Hamilton's care fell below the reasonable standard of professional medical care, "when he failed to evaluate the change in the right eye filtering bleb. Specifically, he failed to perform a Seidel test to test for a leak of the bleb." Dr. Citron, a board-certified ophthalmologist, testified, "[i]t is also my opinion with a reasonable degree of medical certainty that the above deviation from the standard of care by Dr. Hamilton, was a direct cause of Mr. Lawrence Berrell's loss of vision of his right eye."

Dr. Citron testified that he based his opinion about a leak in the bleb on the fact that Berrell's eye became infected. But, Dr. Citron admitted that he did not know when, before June 1999, the bleb began to leak and could not say that it was probably leaking on February 3, when Dr. Hamilton last saw Berrell. Dr. Hamilton, however, testified unequivocally that the bleb was not leaking on February 3 and showed no signs of leaking. And, noting that he had "reviewed . . . the medical records relating to the diagnosis and treatment of the patient's eye infection," Dr. Hamilton testified that "[n]one of the ophthalmologists who cared for the patient after he contracted the infection ever diagnosed a bleb leak." Defense expert, Reay H. Brown, M.D., who examined Berrell's medical records, testified that "[m]y opinion is that it did not [leak]."

As to Berrell's allegation that Dr. Hamilton breached a duty to provide proper post-operative instructions, Berrell admitted that Dr. Hamilton had given such instructions. When Dr. Hamilton was asked whether he discussed the bleb post-operatively with Berrell, Dr. Hamilton responded, "[a]bsolutely." When asked whether he had informed Berrell about the high risk of infection that could cause him

to lose his eye, Dr. Hamilton testified, "Absolutely I told him." He testified that he routinely instructs his patients who undergo the bleb procedure to contact him "if they have redness, pain, decrease in vision."

When Berrell was asked on cross-examination, "[b]ut assume for me that [Dr. Hamilton] has said that it's his routine to tell a patient such as yourself that 'if you've got any problems, some pain, swelling, any changes in your condition, please report that back to me immediately.' You're saying that you never had that conversation with him in follow-up; is that right?" Berrell responded, "I had that conversation in follow-up after the surgery." Berrell testified, however, that he did not recall Dr. Hamilton mentioning the risks or discussing the bleb or leakage during later office visits.

Before leaving for Florida, Berrell sought treatment from his family physician on June 10 for an upper respiratory infection. In Dr. Citron's opinion, the bacteria that invaded Berrell's eye had likely spread from that upper respiratory infection, probably from his sinuses or his throat. Although Dr. Brown also thought that the infection probably entered the eye through the bleb, he added, "it doesn't require a leak for that to happen." Dr. Hamilton testified that "[t]here are many reasons why a post-trabeculectomy glaucoma patient might contract an eye infection other than a bleb leak."

It was Dr. Brown's belief that by the time Berrell sought emergency treatment in Florida, the endophthalmitis was already fairly advanced. Dr. Brown also testified that "[i]t cannot be said to a reasonable degree of medical probability that Mr. Berrell's outcome would have been any different if he had received earlier medical treatment for the infection he suffered in his right eye in June of 1999." Significantly, Berrell's own expert, Dr. Citron, conceded that he did not know whether the outcome would have been different had Berrell obtained medical treatment sooner.

Determining that Berrell failed to offer evidence of a causal link between Dr. Hamilton's purported failure to detect the bleb leak and the infection that resulted in his loss of vision, the trial court found an absence of proof on an essential element of the malpractice claim. The trial court also found that Berrell failed to show that Dr. Hamilton violated the appropriate professional standard of care.

In this appeal, Berrell contends that the trial court erred by overlooking significant issues of disputed material fact and by failing to construe the facts in his favor. He claims that a jury needs to decide whether Dr. Hamilton failed to fully and specifically instruct and warn him about the ramifications of a leak and "the signs and symptoms that would indicate the hazard of a leak and infection and the need to immediately obtain ophthalmologic care." He also asserts that the record contains conflicting evidence as to whether his injury

"in fact resulted from bacteria entering his eye through a leak in the bleb."

To recover in a medical malpractice case, a plaintiff must show not only a violation of the applicable medical standard of care but also that the purported violation or deviation from the proper standard of care is the proximate cause of the injury sustained. See *Anthony v. Chambless*, 231 Ga. App. 657, 659 (1) (500 SE2d 402) (1998). In other words, a plaintiff must prove that the defendants' negligence was both the cause in fact and the proximate cause of his injury. *Matthews v. DeKalb County Hosp. Auth.*, 211 Ga. App. 858, 859 (1) (440 SE2d 743) (1994). A mere showing of negligence without proof of causation is insufficient to withstand summary judgment. See *Estate of Patterson v. Fulton-DeKalb Hosp. Auth.*, 233 Ga. App. 706, 709 (505 SE2d 232) (1998). Medical causation must be proved to a reasonable degree of medical certainty and cannot be based on mere speculation. *Cannon v. Jeffries*, 250 Ga. App. 371, 372 (1) (551 SE2d 777) (2001). "A bare possibility" of causing the injury complained of is not sufficient proof of causation as a matter of law. *Anthony*, supra at 659.

Here, although Berrell offered evidence that an eye infection caused his loss of sight, he did not show that Dr. Hamilton did anything or failed to do anything that caused the eye infection. In essence, he faults Dr. Hamilton for his own failure to seek medical treatment sooner. But this argument is fatally flawed because Berrell did not and could not establish with a reasonable degree of medical probability that had his eye infection been treated sooner, he would not have lost his sight. See *Grantham v. Amin*, 221 Ga. App. 458, 459 (471 SE2d 525) (1996) (harm sustained must be the proximate result of the negligence at issue). Nor did he prove the existence of a leak in the bleb at the time Dr. Hamilton last examined his eye in February or show with a reasonable degree of medical probability that his bleb experienced a leak at any time subsequent to February. Most significantly, Berrell did not establish any causal connection between the purported leak in the bleb and the injury that he ultimately sustained. In fact, his own expert admitted that he did not know whether earlier treatment would have made any difference. Moreover, Dr. Brown testified, "as a group," endophthalmitis patients "do very poorly almost no matter what's done." In addition, Dr. Kozarsky testified that in real life, by the time an infection from a virulent organism "bothers someone a lot . . . I think it's a done deal." No evidence showed otherwise.

On summary judgment, when the moving party makes a prima facie showing of entitlement to judgment as a matter of law, the burden then shifts to the respondent to come forward with rebuttal evidence. *Kelly v. Pierce Roofing Co.*, 220 Ga. App. 391, 392-393 (2) (469

SE2d 469) (1996). This Berrell failed to do. Because the defendants successfully pierced Berrell's pleadings and demonstrated the absence of evidence supporting the essential element of causation, summary judgment was appropriate. See *Grantham*, supra at 459.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED APRIL 15, 2003.

*Andrea Bennett*, for appellant.

*Love, Willingham, Peters, Gilleland & Monyak, Robert P. Monyak, Ashley R. Hill, Scott M. Patterson*, for appellees.