A08A2341. ROBERTS v. NESSIM.
A08A2342. GWINNETT HOSPITAL SYSTEM, INC. v. ROBERTS.
(676 SE2d 734)

DOYLE, Judge.

Virginia Roberts's late husband, Lester Roberts, died while a patient at Gwinnett Hospital System, Inc. d/b/a Gwinnett Medical Center ("the Hospital"). Roberts brought a professional negligence and wrongful death action against the Hospital and Dr. Mourad Nessim, who provided medical care to the decedent. She later amended her complaint to allege a fraud claim against the defendants. The trial court granted summary judgment to Dr. Nessim, and Roberts appeals that ruling in Case No. A08A2341. In the same order, the trial court denied the Hospital's motion to dismiss Roberts's fraud claim, and the Hospital challenges that ruling on cross-appeal in Case No. A08A2342. For reasons that follow, we affirm.

The record shows that the decedent was admitted to the Hospital on December 28, 2002, with a history of stroke and diagnoses of hallucinations, progressive dementia, congestive heart failure, atrial fibrillation, and hypertension. After his admission, he had a stroke. The decedent was seen and treated by physicians in multiple specialties, including cardiology, pulmonology, neurology, and inter-

---

nal medicine. Dr. Nessim, who specializes in internal medicine, began treating him on January 7, 2003. On January 7, 2003, Dr. Nessim ordered that a nasogastric feeding tube be placed in the decedent's stomach based on the patient's inability to eat. Medical staff placed the feeding tube in the decedent, and the placement was confirmed by a radiologist via x-ray. On January 8, 2003, another x-ray was taken, and it revealed that the feeding tube was then located in his lungs. The feeding tube was removed and reinserted, and its placement was again confirmed by an x-ray. The decedent died on January 10, 2003.

Roberts filed suit against the Hospital and Dr. Nessim, asserting professional negligence and fraud claims. In support of her claims, she submitted the affidavit of Dr. Mark Tidswell. Dr. Nessim moved for summary judgment, relying in part upon his own affidavit, stating that his treatment of the decedent did not fall below the standard of care and that no action or inaction by him caused or contributed to any injury alleged by Roberts. The trial court granted the motion, indicating in its order that Tidswell's

> affidavit fails to establish that [the decedent's] injuries were proximate [sic] caused by [a] breach of the standard of care alleged therein. [Tidswell's] affidavit concludes that Plaintiff's decedent's death was the result of the lack of appropriate treatment for pneumonia. [Tidswell's] affidavit does not contain any basis for this conclusion, neither does it contain an allegation that Defendant Nessim was medically responsible for or involved in such treatment or lack thereof. Moreover, [Tidswell's] affidavit does not show an appropriate standard of care or set out any "particulars in which the defendant's treatment of the plaintiff was negligent," as required to overcome Defendant's motion for summary judgment.[1]

The order further specifies that Roberts could not prevail on her fraud claim against Dr. Nessim because she "has not shown that a material fact exists to be tried as to Dr. Nessim's professional negligence."

The Hospital filed a motion to dismiss or, in the alternative, a motion for more definite statement on Roberts's fraud claim. The trial court denied the motion to dismiss, but granted the Hospital's motion for a more definite statement, requiring Roberts to amend

---

[1] The trial court's order cites *Bregman-Rodoski v. Rozas*, 273 Ga. App. 835 (616 SE2d 171) (2005), and *Sparks v. Hoff*, 186 Ga. App. 907 (368 SE2d 830) (1988).

her fraud claim within 35 days "to include the specificity required by OCGA § 9-11-9."

### Case No. A08A2341

1. Roberts argues that the trial court erred in granting summary judgment to Dr. Nessim. We disagree.

To prevail at summary judgment, the movant must demonstrate that there is no genuine issue of material fact and that the undisputed facts warrant judgment as a matter of law.[2]

> A trial court's grant of summary judgment is reviewed de novo on appeal, construing the evidence in the light most favorable to the nonmovant. Once the party moving for summary judgment has made a prima facie showing that it is entitled to judgment as a matter of law, the nonmovant must then come forward with rebuttal evidence sufficient to show the existence of a genuine issue of material fact.[3]

(a) *Professional negligence claim.*

In support of his motion for summary judgment, Dr. Nessim submitted his affidavit in which he stated that his treatment of the decedent did not fall below the appropriate standard of care and that no action or inaction by him contributed to any injury alleged by Roberts. In opposition to the summary judgment motion, Roberts submitted the amended affidavit of her expert, Tidswell. Therein, Tidswell averred that Dr. Nessim breached the applicable standard of care when he: failed to suspect an aspiration event after the decedent experienced a choking episode; ordered the continuation of the decedent's feeding tube; failed to ensure that the decedent received the pulmonary consult that Dr. Nessim ordered; failed "to evaluate, diagnose, or treat an aspiration in [the decedent's] lungs." Tidswell further stated that the decedent's

> chart reflects that his respiratory function continued to decline. Lab results on the morning of January 9, 2003 reveal that Mr. Robert[s] had an elevated white blood cell [sic]. It is my opinion that Mr. Roberts was suffering from pneumonia brought about by tube feeding aspiration. The pneumonia was not treated appropriately by Dr. Nessim [or the treating nurses]. As a result of the lack of treatment, Mr. Roberts died on January 10, 2003.

---

[2] See *Walker v. Gwinnett Hosp. System*, 263 Ga. App. 554, 555 (588 SE2d 441) (2003).

[3] (Citation omitted.) *Collins v. Dickman*, 295 Ga. App. 601, 602 (672 SE2d 433) (2008).

(i) Roberts alleges that the trial court erred in concluding that Tidswell's "amended affidavit failed to show that he was qualified to render his expert opinions." But the trial court made no such ruling. Although the trial court stated in its order that it was "not convinced" that Tidswell's affidavit was sufficient to establish that he was qualified to render the opinions contained therein, the trial court did not actually state a rationale or ruling on this issue. Thus, this enumeration presents no basis for reversal.

Dr. Nessim urges this Court to apply the "right for any reason rule" and affirm the trial court's grant of summary judgment — applying a de novo standard of review — on the basis that Tidswell failed to meet the qualification requirements for experts set forth in OCGA § 24-9-67.1. Pretermitting whether Tidswell was qualified to render his opinions in this case, the issue is not properly before us, given the trial court's failure to rule on this issue, the standard of review, and the language of the statute.[4]

(ii) Roberts further argues that the trial court erred in concluding that Roberts failed to establish that a breach of the standard of care by Dr. Nessim was the proximate cause of the decedent's injuries. We disagree.

To recover on a professional negligence claim, a plaintiff must demonstrate that the defendant physician violated the applicable medical standard of care *and* that the violation was the proximate cause of the injury.[5] "Proof of negligence, alone, is insufficient to sustain recovery. It must be proven that the injury complained of proximately resulted from such want of care or skill."[6] Further, "there can be no recovery where there is no showing to any reasonable degree of medical certainty that the injury could have

---

[4] See *Nathans v. Diamond*, 282 Ga. 804, 806, n. 8 (654 SE2d 121) (2007) (a trial court's finding regarding an expert's qualification made following a pretrial hearing "will only be reversed on appeal if the trial court abused its discretion in making its ruling"); *MCG Health v. Barton*, 285 Ga. App. 577, 580 (1) (647 SE2d 81) (2007) ("[t]he issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion") (punctuation omitted); OCGA § 24-9-67.1 (c) (2) (A) (in a medical malpractice action, the opinions of an expert are admissible if the expert was licensed in his or her profession and had "actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in . . . [t]he active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, *as determined by the judge*, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue") (emphasis supplied).

[5] See *Allen v. Family Med. Center*, 287 Ga. App. 522, 524 (1) (652 SE2d 173) (2007); *Berrell v. Hamilton*, 260 Ga. App. 892, 896 (581 SE2d 398) (2003).

[6] (Punctuation and footnote omitted.) *Allen*, 287 Ga. App. at 524 (1).

been avoided.'"[7] If the defendant physician, in his motion for summary judgment

> gives a medical affidavit that states a medical opinion that the alleged deviation from the standard of care has no causal connection with the injury or aggravated a preexisting condition, such motion has pierced the plaintiff's pleadings, refuted causation, and shifted the burden to the plaintiff of coming forward with some evidence to create a material issue of fact, because the defendant . . . has disproved the essential element of causation. *When causation is involved, plaintiff has a more complex dilemma where the defendant has given expert testimony that there was no proximate cause, because to merely show a causal link does not refute the defendant's denial of causation and leaves an examination upon the entire record that the evidence does not create a triable issue as to the essential elements of causation, requiring the grant of summary judgment.* Thus, the plaintiff must present medical expert opinion as to causation which may be aided by other medical or nonmedical evidence that, in totality, shows causation, even though the medical opinion is weak, i.e., showing a reasonable possibility rather than a probability.[8]

Here, Dr. Nessim refuted causation and consequently pierced the pleadings by giving his medical affidavit.[9] Accordingly, Roberts had the burden to produce evidence demonstrating the essential elements of causation; simply showing a causal link between Dr. Nessim's actions or inactions and the decedent's injuries was insufficient.[10] Roberts relied solely on Tidswell's affidavit to meet her burden of production, failing to point to any additional evidence (medical or otherwise) to show causation. But Tidswell's conclusory affidavit is simply insufficient to create a genuine issue of fact as to causation.

In his affidavit, Tidswell avers that Dr. Nessim violated the standard of care by failing to properly diagnose and treat the decedent's feeding tube aspiration and that the aspiration caused the decedent's pneumonia. He then concludes that Dr. Nessim's failure to appropriately treat the pneumonia resulted in the decedent's

---

[7] (Punctuation omitted.) Id.

[8] (Citations and punctuation omitted; emphasis supplied.) *Estate of Patterson v. Fulton-DeKalb Hosp. Auth.*, 233 Ga. App. 706, 709-710 (2) (505 SE2d 232) (1998).

[9] See id.

[10] See id.

death.[11] Tidswell provides no specifics whatsoever regarding the purported negligence; he offers no testimony as to "the proper method for treating a case such as [the decedent's], i.e., what should have been done, and comparing that to what was actually done, so as to illustrate the professional malfeasance involved."[12] Further, Tidswell fails to show to any reasonable degree of medical certainty that the decedent's injuries could have been avoided by some action or inaction by Dr. Nessim. To do so, Tidswell could have stated, for example,

> that the only apparent cause of [the decedent's] injuries was [Dr. Nessim's] action [or inaction] by presenting overwhelming testimony of experience that, in the absence of the alleged negligence, the patient's condition could have been prevented from worsening, or by stating that the injuries "could have been avoided" in conjunction with a specific explanation regarding what precautions should have been taken by [Dr. Nessim] and a statement that the failures proximately caused the injuries.[13]

Under these circumstances, where the only evidence to demonstrate causation was Tidswell's unsupported conclusory affidavit, we hold that Roberts failed to carry her burden on summary judgment, and we affirm the trial court's ruling on this basis.[14]

(b) Roberts also alleges that the trial court erred in granting summary judgment to Dr. Nessim on her fraud claim. Again, we discern no error.

In a single allegation of fraud against Dr. Nessim, Roberts alleges that he "knew or reasonabl[y] should have known" that the decedent aspirated substances from the feeding tube in his lung, but nevertheless "participated in the concealment by failing to proceed with a pulmonology consult that would have revealed his failure to treat the patient and the attending nurses['] failure to recognize that Lester Roberts aspirated substances from the feeding tube." The trial court granted summary judgment to Dr. Nessim, finding that Roberts failed to demonstrate "that a material fact exists to be tried as to Dr. Nessim's professional negligence."

---

[11] Tidswell explains in his affidavit that his opinions are based on his review of the depositions of several individuals, including Dr. Nessim and two nurses, as well as the decedent's certified medical records.

[12] *Sparks*, 186 Ga. App. at 908.

[13] *Beasley v. Northside Hosp.*, 289 Ga. App. 685, 688-689 (658 SE2d 233) (2008).

[14] Compare *Allen*, 287 Ga. App. at 525 (1). See also *Estate of Patterson*, 233 Ga. App. at 710 (2); *Sparks*, 186 Ga. App. at 908.

The elements of a fraud claim are:

> a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff. For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort.[15]

In his motion for summary judgment, Dr. Nessim argued that (1) the record contained no evidence that he made any false representations to Roberts, that he knew they were false when he made them, or that he made them with an intent to deceive her; and (2) there was no evidence that Roberts justifiably relied on any alleged false statements made by Dr. Nessim or that the decedent's death "was in any way linked to any alleged false statements in this case." Once Dr. Nessim pointed to the absence of evidence to support these elements of Roberts's fraud claim, Roberts "had to come forward with specific evidence giving rise to a triable issue."[16] In her response to the summary judgment motion, Roberts "directed the [trial court]" to 11 depositions, Tidswell's affidavit, and the decedent's medical records. However, Roberts failed to specify how any of this evidence supported the requisite elements of her fraud claim, and she also fails to do so on appeal. Under these circumstances, she has not demonstrated reversible error in the trial court's grant of summary judgment to Dr. Nessim on Roberts's fraud claim.[17]

### Case No. A08A2342

2. In its cross-appeal, the Hospital argues that the trial court erred in denying its motion to dismiss Roberts's fraud claim against the Hospital for failure to plead with particularity. We disagree.

"In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor."[18]

> Although fraud must be pled with particularity under OCGA § 9-11-9 (b), a complaint alleging fraud should not

---

[15] (Punctuation omitted.) *Johnson v. Rodier*, 242 Ga. App. 496, 498 (2) (529 SE2d 442) (2000).

[16] (Punctuation omitted.) Id.

[17] See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); *Wright v. AFLAC, Inc.*, 283 Ga. App. 890, 892 (2) (643 SE2d 233) (2007); *Aliabadi v. McCar Dev. Corp.*, 249 Ga. App. 309, 312-313 (1) (547 SE2d 607) (2001); *Johnson*, 242 Ga. App. at 498-499 (2).

[18] (Punctuation omitted.) *Walker v. Walker*, 293 Ga. App. 872 (668 SE2d 330) (2008).

be dismissed for failure to state a claim unless it appears beyond a doubt that the pleader can prove no set of facts in support of his claim which would entitle him to relief. Rather than move to dismiss, a defendant seeking greater particularity may either move for a more definite statement or wait for the outcome of discovery.[19]

Here, Roberts alleged that the Hospital, "through its agents and employees[,] committed fraud by attempting to conceal the events leading to Lester Roberts['s] death." The Hospital filed a "Motion to Dismiss, or in the Alternative, Motion for More Definite Statement on Plaintiff's Allegations of Fraud," arguing that Roberts's fraud claim was insufficient under OCGA § 9-11-9 (b), which requires that "[i]n all averments of fraud . . . , the circumstance constituting fraud . . . shall be stated with particularity." In response to the motion, Roberts argued that the Hospital employees failed to disclose that the decedent's feeding tube was placed in his lung and that he aspirated tube feeding, and the decedent's family members relied on the information conveyed by the Hospital in making decisions about his medical care.[20] The trial court denied the motion to dismiss, but ordered Roberts to amend her fraud claim within 35 days "to include the specificity required by OCGA § 9-11-9."[21]

Clearly, Roberts's complaint alleging that the Hospital employees "attempt[ed] to conceal the events leading to [the decedent's] death" fails to allege specific facts to support a finding that the Hospital intentionally made false statements about the decedent's condition with the intention of inducing Roberts to rely on them or that Roberts justifiably relied on the alleged false statements.[22] However, we cannot state that "it appears beyond doubt" that Roberts could prove no set of facts in support of her fraud claim that would entitle her to relief.[23] Thus, the trial court properly denied the Hospital's motion to dismiss.[24]

---

[19] (Citations and punctuation omitted.) *Hedquist v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 284 Ga. App. 387, 394 (2) (b) (643 SE2d 864) (2007).

[20] We note that the Hospital makes no argument that Roberts's fraud claim should be dismissed because the alleged false statements were not made to her, and therefore we do not address this argument. This decision should not, however, be construed to render a holding on this issue.

[21] In her response brief, Roberts "requests that, in the exercise of its de novo right of review, this Court should reverse the trial court's order granting [the Hospital's] motion for a more definite statement." Because Roberts did not enumerate as error this ruling in her appeal, the issue is not properly before us.

[22] See *Johnson*, 242 Ga. App. at 498 (2) ("[t]he tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff") (punctuation omitted).

[23] *Cochran v. McCollum*, 233 Ga. 104, 105 (210 SE2d 13) (1974).

[24] See id.; *Hedquist*, 284 Ga. App. at 394 (2) (b); *SRH, Inc. v. IFC Credit Corp.*, 275 Ga.

*Judgments affirmed. Andrews, P. J., and Bernes, J., concur.*

ON MOTION FOR RECONSIDERATION.

Roberts has moved for reconsideration and to supplement the record on appeal in Case No. A08A2341, arguing that we should direct the trial court to transmit the deposition transcript of Dr. Nessim that Roberts filed with the trial court in opposition to Dr. Nessim's motion for summary judgment. According to Roberts, Dr. Nessim's deposition contains "matters . . . supporting Appellant Roberts' negligence and fraud claims."

In her notice of appeal, Roberts requested that the trial court clerk "include in the record on appeal all orders, pleadings, motions, amendments, affidavits, depositions, discovery, and documents of any kind or nature filed by the parties prior to and including the date of the filing of [the notice of appeal]." In support of her motion to supplement the record, Roberts refers to a notice of filing of original discovery that she filed in the trial court, which included the deposition of Dr. Nessim. Roberts did not, however, refer to Dr. Nessim's deposition in her appellate brief nor in her brief filed in the trial court opposing summary judgment. Thus, her argument(s) that Dr. Nessim's deposition supports her claims for malpractice and fraud are being made for the first time on motion for reconsideration.

More importantly, "[t]he law is quite clear that it is the primary responsibility of the appropriate parties and not this court to ensure that all documents relevant to the disposition of an appeal be duly filed with the clerk of this court prior to the issuance of our appellate decision."[25] Roberts failed to do so, and she "cannot now perfect a deficiency in her appeal by belatedly attempting to file records, which were missing through no fault of this court at the time of our appellate disposition of this case."[26]

We have repeatedly held that

> it is the state of an appellate record and transcript duly before us at the time of our original disposition of an appeal, and not the state of the record as amended in an attempt to support an appellate position argued on motion for recon-

App. 18, 19 (619 SE2d 744) (2005).

[25] (Punctuation and footnote omitted.) *Keita v. K & S Trading*, 292 Ga. App. 116, 119 (663 SE2d 362) (2008) (on motion for reconsideration).

[26] (Punctuation and footnote omitted.) Id.; see *Wheeling-Culligan v. Allen*, 243 Ga. App. 776, 777 (533 SE2d 797) (2000) (on motion for reconsideration).

sideration, that is controlling as to the adequacy of the record for purposes of appellate review.[27]

Thus, "[w]e may not now properly reconsider the case using documents provided to this Court after the issuance of our opinion."[28]

Pursuant to Court of Appeals Rule 37 (e), this Court will grant reconsideration

> only when it appears that the Court overlooked a material fact in the record, a statute or a decision which is controlling as authority and which would require a different judgment from that rendered, or has erroneously construed or misapplied a provision of law or a controlling authority.

Our review of the opinion and Roberts's motion reveals no basis for reconsideration. Accordingly, Roberts's motion for reconsideration is hereby denied, as is her motion to supplement the record on appeal.

*Motion for reconsideration denied.*

DECIDED MARCH 10, 2009 —
RECONSIDERATION DENIED APRIL 2, 2009 ▮▮▮▮▮▮

*Hicks, Massey & Gardner, Frederick V. Massey*, for Roberts.
*Hall, Booth, Smith & Slover, Jack G. Slover, Jr., Shaun Daugherty, Jack G. Gresh, Lynda W. Kenney*, for Gwinnett Hospital System, Inc. and Nessim.

---

[27] (Punctuation omitted.) *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 598 (533 SE2d 136) (2000) (on motion for reconsideration).

[28] *Wheeling-Culligan*, 243 Ga. App. at 778.