**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 11, 2014**

# In the Court of Appeals of Georgia

A14A0155. REEVES et al. v. MAHATHRE et al.

DILLARD, Judge.

In this wrongful-death action premised on medical malpractice, appellants Michael Reeves, Sharon Reeves, and Marcus Reeves, Jr., individually, and Michael Reeves, as executor of the Estate of Jonelle Reeves (collectively, "Appellants"), sued Dr. Vijay Mahathre and his employer, Ben Hill Emergency Group LLC (collectively, "Dr. Mahathre"),[1] *inter alia*,[2] alleging that Dr. Mahathre was negligent in the medical

---

[1] Appellants assert that Ben Hill Emergency Group LLC is vicariously liable solely as Dr. Mahathre's alleged employer and assert no direct claims against it.

[2] The other named defendants to the lawsuit included The Hospital Authority of Ben Hill County; Tift County Hospital Authority; Tift County Hospital Authority d/b/a Tift Regional Medical Center; Tift Regional Medical Center; Colony Medical Associates, P.C.; Derrick Taylor, M.D.; Affinity Health Group, LLC; and Christina Rich, M.D.

care he provided to their mother, Jonelle Reeves ("Reeves"), in the emergency department at Dorminy Medical Center ("DMC"). Dr. Mahathre, an emergency-room physician, filed a motion for summary judgment, asserting that he did not breach the applicable standard of care when he treated Reeves and, further, that Appellants failed to establish a causal connection between his care of Reeves and her subsequent death. The trial court granted Dr. Mahathre's motion, and Appellants claim that the court erred in doing so. Because we agree that the appellate record fails to establish that a genuine issue of material fact exists as to whether Dr. Mahathre's treatment proximately caused Reeves's death, we affirm.

Viewed in the light most favorable to Appellants as the nonmovants,[3] the record shows that at approximately 6:20 p.m. on May 21, 2008, Reeves, a 71-year-old with a history of diabetes and hypertension, presented at the emergency room in DMC, complaining of nausea and severe pain in her abdomen and right flank. Dr. Mahathre was her attending emergency-room physician. After taking a medical history and conducting a physical examination, Dr. Mahathre ordered a series of tests,

_____

[3] *See Carr v. Kindred Healthcare Operating, Inc.*, 293 Ga. App. 80, 80 (666 SE2d 401) (2008) ("A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.").

including a complete blood count, blood-chemistry analysis, urinalysis, and an upright kidney-ureter-bladder x-ray. He further administered Reeves an intramuscular injection of pain medication and an anti-nausea medicine, and also gave her an oral antibiotic.

Although Reeves's white-blood-cell count was elevated, possibly indicating an infection, both her urinalysis and x-ray were normal. The pain medication provided Reeves some relief and, without offering a formal diagnosis, Dr. Mahathre discharged her in "improved" condition at 8:45 p.m. with an antibiotic prescription and instructions to see her primary-care physician within two days.[4]

The following morning, May 22, 2008, Reeves was seen at her primary-care physician's office by an advanced-practice registered nurse and, later that afternoon, was admitted as an inpatient at DMC with increased abdominal pain, fever, and an elevated white-blood-cell count. Then, at approximately 9:35 p.m., an abdominal CT

---

[4] Dr. Mahathre testified during his deposition that he discussed with Reeves, in the presence of Reeves's daughter, the option of performing a computed-tomography scan ("CT scan") and that Reeves declined the test. Reeves's daughter testified that she remembered no such conversation. Because we must construe the evidence and all inferences in the light most favorable to Appellants, we will assume that Reeves was not offered a CT scan.

scan was performed, which showed that Reeves was suffering from a 5 millimeter kidney stone blocking her right ureterovesical junction.[5]

After discovering Reeves's diagnosis and, consequently, the need to consult a urologist, and given that DMC had no urologist on-call and available, the attending physician called Dr. Robert Gregory Anderson, a urologist from Tift Regional Medical Center, approximately 30 miles away. Dr. Anderson was unable to accept transfer of Reeves that evening because Tift Regional did not have an available bed, but a decision was made to transfer her first thing in the morning and admit her directly into the surgery unit where Anderson could then place a stent to relieve the blockage to her kidney.[6]

Reeves was transferred to Tift Regional by ambulance at approximately 8:00 a.m. the following morning (May 23, 2008). Upon her arrival to Tift Regional, however, Reeves was in critical condition and it was determined that she was not stable enough to undergo general anesthesia. Consequently, she was not cleared for

---

[5] The ureterovesical junction refers to the point at which the ureter joins the bladder.

[6] The alternative option of transferring Reeves to a hospital in Macon, approximately 100 miles away, was mentioned but apparently ruled out due to the difficulty of locating a urologist and effecting the transfer given the late hour.

surgery and Dr. Anderson was unable to place the stent. Tragically, Reeves was in septic shock and, at 1:15 a.m. on May 24, 2008, she was pronounced dead as a result of "urosepsis," an overwhelming infection that developed in her urinary tract due to the blockage caused by the kidney stone.

Appellants filed the instant wrongful-death lawsuit, alleging medical malpractice against numerous defendants involved in Reeves's care, including Dr. Mahathre. In support of their claims, Appellants presented expert testimony that Dr. Mahathre was negligent in failing to order a CT scan and/or diagnose Reeves's condition prior to discharging her from the emergency room during her initial visit on May 21, 2008. Dr. Mahathre filed a motion for summary judgment denying that he breached a duty of care to Reeves, but asserting that, regardless of his purported negligence, there was no causal connection between his actions and Reeves's tragic death. The trial court granted his motion, and this appeal follows.

In order to establish liability in a medical-malpractice action, a plaintiff must prove three essential elements: "(1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury

5

sustained."[7] Significantly, negligence alone is "insufficient to sustain recovery for wrongful death in a medical malpractice action."[8] Rather, it must be proven that "the death of a patient proximately resulted from such want of care or skill."[9] And such causation must be established "to a reasonable degree of medical certainty,"[10] cannot

---

[7] *Zwiren v. Thompson*, 276 Ga. 498, 499 (578 SE2d 862) (2003) (punctuation omitted); *see also* OCGA § 51-1-27 ("A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had.").

[8] *Grantham v. Amin*, 221 Ga. App. 458, 458 (471 SE2d 525) (1996) (punctuation omitted); *accord Roseberry v. Brooks*, 218 Ga. App. 202, 206 (1) (461 SE2d 262) (1995); *see Berrell v. Hamilton*, 260 Ga. App. 892, 896 (581 SE2d 398) (2003) ("A mere showing of negligence without proof of causation is insufficient to withstand summary judgment.").

[9] *Grantham*, 221 Ga. App. at 458 (punctuation omitted); *accord Roseberry*, 218 Ga. App. at 206 (1); *see Berrell*, 260 Ga. App. at 896 ("[A] plaintiff must prove that the defendants' negligence was both the cause in fact and the proximate cause of his injury."); *Cannon v. Jeffries*, 250 Ga. App. 371, 373 (1) (551 SE2d 777) (2001) ("[T]here must be a realistic assessment of the likelihood that the alleged negligence caused the injury or death." (punctuation omitted)).

[10] *Cannon*, 250 Ga. App. at 373 (1); *see Anthony v. Chambless*, 231 Ga. App. 657, 659 (1) (500 SE2d 402) (1998) ("[T]here can be no recovery for medical negligence involving an injury to the patient where there is no showing to any reasonable degree of medical certainty that the injury could have been avoided." (punctuation omitted)).

be based upon "mere chance or speculation,"[11] and when, as here, it falls outside the ken of the normal juror, requires the support of expert testimony.[12]

Assuming, as we must under the standard of review, that Dr. Mahathre breached the applicable standard of care in failing to order a CT scan on Reeves and/or to diagnose the kidney stone and resulting blockage, the record nonetheless fails to create a jury issue on the question of causation. Indeed, Appellants' own expert, Dr. Richard Braen, an emergency-room physician, testified that, had Dr. Mahathre ordered a CT scan and properly diagnosed Reeves's condition, the standard of care required that he then contact a urologist and follow the urologist's instructions

---

[11] *Cannon*, 250 Ga. App. at 373 (1) (punctuation omitted); *see Ladner v. Northside Hosp., Inc.*, 314 Ga. App. 136, 140 (723 SE2d 450) (2012) ("A mere possibility of . . . causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant. (punctuation omitted)); *Anthony*, 231 Ga. App. at 659 (1) ("Although it is not necessary for the plaintiff's experts to use the magic words 'reasonable degree of medical certainty' in describing the decedent's prospect of survival with appropriate treatment, such prospect must be more than a mere chance or speculation.").

[12] *See Zwiren,* 276 Ga. at 500; *see also Moore v. Singh*, ___ Ga. App. ___ (1) (755 SE2d 319) (decided March 18, 2014) ("[When] the question of causation is outside the ken of the normal juror, this showing must be based on expert testimony that is sufficient to support a finding that the deviation from the standard of care to a reasonable degree of medical certainty caused the injury.")

as to her treatment. And had he done so, according to Dr. Braen, Dr. Mahathre would have satisfied his duty of care to Reeves.

In turn, Dr. Mahathre presented the testimony of the urologist who was ultimately consulted to care for Reeves, Dr. Anderson. Dr. Anderson testified that had Dr. Mahathre performed a CT scan and consulted him with the results—*i.e.*, that a 5 millimeter kidney stone was blocking her right ureterovesical junction—on the night that Reeves presented in the emergency room, he would have advised Mahathre to treat Reeves in the exact fashion that he, in fact, did. Specifically, because Reeves's urine was clear, she had no fever, and she was responding to the pain medicine, Dr. Anderson would "have done nothing differently," in that he would have recommended that Reeves be sent home with pain medication in order to see if she could pass the stone independently and advised her to follow up with him or her primary-care physician in two to three days.[13]

---

[13] Although Dr. Braen opined that the questions evoking Dr. Anderson's deposition responses failed to account for Reeves's age and history of diabetes, Anderson filed a subsequent affidavit in which he confirmed that he was, in fact, referring specifically to Reeves and considering those factors when he gave his deposition testimony.

Additionally, Dr. Craig V. Comiter—a urology and causation expert for Appellants[14]—testified that Reeves had "no obvious signs or symptoms of [a urinary] infection at her initial ER presentation [to Dr. Mahathre]," and that it was only when she returned to the hospital for admission that "she was displaying signs and symptoms of infection." And when Dr. Comiter was directly asked whether he had "an opinion [as to] whether or nor any act or omission by Dr. Mahathre caused or contributed to the patient's death," he simply responded, "No."

The foregoing testimony goes directly to the issue of causation, and appellants have presented no expert testimony to contradict it.[15] Although one of Appellants'

---

[14] Appellants identified Dr. Comiter as an expert witness "expected to testify regarding the causal link between the defendants' provision of medical treatment or failure to provide medical treatment at issue and the injuries and death of Ms. Jonelle Reeves."

[15] *See Berrell*, 260 Ga. App. at 896 ("[W]hen the moving party makes a prima facie showing of entitlement to judgment as a matter of law, the burden then shifts to the respondent to come forward with rebuttal evidence."); *see also* OCGA § 9-11-56 (e) ("When a motion for summary judgment is made and supported as provided in this Code section, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Code section, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."); *Estate of Patterson v. Fulton-DeKalb Hosp. Auth.*, 233 Ga. App. 706, 709 (2) (505 SE2d 232) (1998) ("[When] . . . the defendant hospital makes a motion for summary judgment and the attending physician gives a medical affidavit that states a medical opinion that the alleged deviation from the standard of care has no causal

experts—Dr. Julian L. Seifter, a nephrologist—opined *generally* that the failure of Dr. Mahathre, among various other medical professionals, to correctly diagnose Reeves and relieve the obstruction "ultimately led to the development of . . . urosepsis and . . . caused her death," this generalized testimony was not sufficient to create a jury question on the issue of causation.[16] Indeed, when causation is involved, "plaintiff has a more complex dilemma where the defendant has given expert testimony that there was no proximate cause, because to merely show a causal link does not refute the defendant's denial of causation . . ., requiring the grant of summary judgment."[17] And because Dr. Mahathre successfully pierced Appellants'

_____

connection with the injury or aggravated a pre-existing condition, such motion has pierced the plaintiff's pleadings, refuted causation, and shifted the burden to the plaintiff of coming forward with some evidence to create a material issue of fact, because the defendant hospital has disproved the essential element of causation.").

[16] Moreover, Dr. Seifter noted that if patients "are partially obstructed and there's no infection, they may go home and with pain medication to try and see if they will pass the stone."

[17] *Roberts v. Nessim*, 297 Ga. App. 278, 282 (1) (a) (ii) (676 SE2d 734) (2009) (emphasis omitted) (punctuation omitted); *see also Savannah Valley Prod. Credit Ass'n v. Cheek*, 248 Ga. 745, 746 (4) (285 SE2d 689) (1982) ("[W]hen the defendant produces an expert's opinion in his favor on motion for summary judgment and the plaintiff fails to produce a contrary expert opinion in opposition to that motion, then there is no genuine issue to be tried by the jury and it is not error to grant summary judgment to the defendant." (punctuation omitted)).

pleadings and demonstrated the absence of evidence supporting the essential element of causation,[18] summary judgment was appropriate in the case *sub judice*.[19]

*Judgment affirmed. Doyle, P. J., concurs. Miller, J., concurs in judgment only.*

---

[18] In its order, the trial court invited Appellants to identify any evidence that Dr. Mahathre's care of Reeves proximately caused her death, noting, "Should the Court have missed seeing any evidence of causation, we would invite a motion to reconsider this ruling and point out evidence we have missed," and "[w]e neither recall nor find any reference to any such evidence referred to in the record or at oral argument on these motions regarding any medical opinion that any act of defendant Mahathre's caused any harm to decedent." As was the case below, Appellants do not direct us to *any* evidence creating a genuine issue of material fact as to whether Dr. Mahathre's alleged negligence was a proximate cause of Reeves's death.

[19] *See Roberts*, 297 Ga. App. at 282-83 (1) (a) (ii) (holding plaintiff's conclusory affidavit failed to overcome defendant's direct denial of causation sufficient to create a jury issue on causation); *Berrell*, 260 Ga. App. at 896 (affirming grant of summary judgment because plaintiff produced no direct expert testimony to counter that of defendant's expert on the issue of causation); *Stewart v. Palmyra Park Hosp.*, 171 Ga. App. 477, 477 (320 SE2d 262) (1984) (same).